## SARTOR et al. v. UNITED GAS PUBLIC SERVICE CO.

No. 8065.

Circuit Court of Appeals, Fifth Circuit.

June 6, 1936.

Rehearing and motion to amend judgment denied July 13, 1936.

G. P. Bullis, of Vidalia, La., for appellants.

W. Scott Wilkinson, of Shreveport, La., and H. Flood Madison, Jr., Geo. Gun-

by, and Frank O. Looney, all of Monroe, La., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was by plaintiffs, lessors in five gas leases, for balances alleged to be due as royalties for the years 1929 to 1932, inclusive. The claim was that the leases entitled plaintiffs to receive as royalties one-eighth of the market price of all gas produced, and that for the period in question they had been paid only 3 to 3½¢ instead of 6½¢, the true market price.

Anticipating the defense that they had accepted as the market price and in full settlement and satisfaction the amounts paid them as royalties, plaintiffs alleged that these were falsely and fraudulently tendered by defendant as the true amounts owing, and they were accepted by plaintiffs in reliance on these statements and in ignorance of their falsity.

The defenses were: (a) Actual payment without fraud, misrepresentation, or concealment of the full, true, and correct market price throughout the period sued for. (b) A complete settlement, accord, and satisfaction. These are the gas royalty provisions of the five leases:

Lease No. 1. "One-eighth of the value of such gas calculated at the rate of market price at well."

Lease No. 2. "One-eighth of the value of such gas calculated at the rate of market price at well."

Lease No. 3. "One-eighth of the value of such gas calculated at the rate of market price at the well, but at not less than 3 cents per thousand feet."

Lease No. 4. "In case lessee shall sell gas at the wells, 1/8 of the amount realized from such sales, and in all other cases when sold or used off the premises, the market price at the well of 1/8 of the gas so sold or used."

Lease No. 5. "One-eighth of the value of such gas calculated at the rate of market price, minimum to be not less than 3¢ per thousand cubic feet."

It would seem, from this statement of the issues and of the royalty provisions of the leases, that the trial of the case would have been a simple matter of taking evidence, on the first issue, as to the market price at the well, and, on the second issue, as to the circumstances under which the royalties had been paid to and received by plaintiffs. Because, however, of the diametrically opposed and completely irreconcilable views of plaintiffs and defendant as to the effect of our opinion in Arkansas Natural Gas Co. v. Sartor, 78 F.(2d) 924, 925, on the admissibility of term pipe line purchase contracts and of testimony as to the prices they dealt with, this was not to be. Because of the persistence and unyieldingness with which these opposing views were pressed upon the trial court, instead of an ordered and consistent process of proof by competent evidence bearing on and developing the issues for a jury verdict, the trial consisted of a barrage of questions, objections, and exclusionary rulings, with the result that, when plaintiffs closed, they had gotten no substantial evidence into the record, and a verdict on that score was directed against them. Plaintiffs are here complaining of these exclusionary rulings and insisting that, because of the District Judge's misapprehension of the effect of our decision, plaintiffs have been in effect deprived of their right to try to the jury the real issue in the case, the market value of the gas at the well.

Defendant, stoutly maintaining that every ruling complained of was correctly made, insists as plaintiffs did when appellees in the Arkansas Case, that appellants are not in a position to complain of them, because their bills of exceptions do not set out in connection with the excluded answers, what was expected to be proved thereby. It cites in support, as plaintiffs did in the Arkansas appeal, our case of Meador v. National Liberty Ins. Co., 53 F.(2d) 731.

The rule appellants invoke is not an absolute one to be applied at all events and without regard to the justice or injustice of an individual application. When, as here, there is not a complaint of a single ruling in a long trial, but of a systematic course of rulings, and the nature of the questions and the whole course of the attempted proof make plain what the evidence would have been, if the answers had been allowed, it would be a sticking in the bark to refuse, on this ground, to consider the assignments.

Since it is plain here what the real difficulty is, what the plaintiffs were trying to do, and what they were prevented by the rulings from doing, we have considered the assignments in the light of the

whole record, to determine whether prejudicial error was committed. We think there was. That error proceeded from the difficulty the District Judge found himself in in endeavoring, in the state of the evidence, to give effect to his correct understanding of our former opinion, that, while the pipe line contracts were as documents inadmissible, it was proper, under proper restrictions, to receive the testimony of persons who knew the facts as to the sales made to pipe lines and others, and as to the importance and bearing of the factors entering into those prices.[1] This difficulty was not lightened or made easier by plaintiffs' and defendant's fixed attitude toward our former decision. Plaintiffs, struggling more to avoid its effects than to comply with it, persisted not only in their efforts to introduce the contracts as documentary evidence, but, on having their contents interpreted by persons having no familiarity whatever with the market price in the field, while the defendant, by its objections, in effect that our opinion had made taboo not only the contracts themselves, but any reference to the prices they dealt with, greatly contributed to the confusion of the issues and the frustration of the trial. Persisting in putting forward as witnesses to facts persons whose only knowledge had been obtained by a mere reading of the contracts, and who therefore in testifying were not stating facts but merely trying to put in the record by word of mouth what had in written form been excluded, plaintiffs put the court to ruling after ruling of the same kind, all without error. The assignments Nos. 6, 7, 8, 9, 13, 18, 19, 20, 21, and 22, raising these points, are overruled. In the same way, over objection after objection, they persisted in endeavoring to have the witnesses testify as to the intent of the parties in signing the contracts, assignments Nos. 1, 2, 3, 4, 5, 14, 15, 16, and 24 raise these matters. None of them are meritorious. All are overruled.

If all the testimony plaintiffs offered had been of this kind, the District Judge would have been correct in his rulings and the judgment ought to stand. But this was not all. Plaintiffs offered the testimony of a witness qualified to testify, Mr. Hargrove, vice president of the company, called as witness and for cross-examination under the statutes of Louisiana, and endeavored to prove by him the prices of sales of gas under the pipe line contracts. This witness was qualified to testify as to the values in the field, both as influenced and as evidenced by the contracts and apart from them. He was the same witness the exclusion of whose testimony on the former trial, when offered against the plaintiffs, we held erroneous. This is the offer, the objection, and the ruling as to this testimony:

"During the course of the examination of the witness, he was asked with respect to the various pipeline contracts, concerning which he testified, at what price or prices sales of gas were made, under the several contracts, and each time such question was asked objection was made thereto by the defendant, for the reason that the sales about which the witness was being questioned were not shown to be made under the same surrounding conditions as those set forth and contemplated in the contracts sued on. Various factors and

---

[1] At page 63 of the record, in correctly excluding the testimony of Dr. Sartor, who had no knowledge except from reading the contracts, he stated his understanding of the opinion thus:

"The meaning of what was said was substantially this: that any witness who, because of experience in the field and familiarity with conditions that obtained there, and generally has knowledge of the sales of gas in the fields, or one who had personal knowledge of particular transactions, whether expert or not, would be permitted to testify and give his opinion as to what the market price was. * * * As I see it, the present witness is using as the basis of his information upon which to give his opinion, the very contracts which the Court of Appeals has ruled out and held were inadmissible in evidence in determining the question of market value. Therefore, as I see it, to permit this testimony would be doing in the first place, indirectly what the Court of Appeals has stated could not be done directly, that is, that these contracts could not be used."

At page 65, in his ruling excluding the same witness' testimony, he stated it thus:

"It seems to me that the answer to the problem of plaintiffs is to get somebody in here who knows about the gas business, who knows something about the confection of these contracts, who can take them on the stand and tell you approximately what proportion of these prices, in view of the stipulations otherwise made in these contracts, may be attributable to those elements."

considerations served as the basis of the sale or sales about which the witness was being questioned which were not incorporated in, or contemplated by, the contracts sued on, for the reason that such sales were not made for well-side delivery, as is provided in and contemplated by the lease contracts sued on, for the reason that it had not been established that there was no market price for gas at the well in the Richland Gas Field, and until that had been done, sales made for deliveries at some other point or points were not pertinent to the issues involved, for all of which reasons the sale or sales about which the witness was being examined were irrelevant and immaterial, and for the further reason that the contracts themselves were the best evidence as to their contents, but that inasmuch as the contracts about which the witness was being questioned, and especially the recitals therein of prices for gas, had been held to be inadmissible by the United States Circuit Court of Appeals for the Fifth Circuit, and the contracts themselves being inadmissible, the testimony of this witness as to contents thereof was likewise inadmissible. On the trial of the case such objections made by defendant to these questions were sustained by the Court, and the answers of the witness thereto were ordered stricken from the deposition and were not read to the jury, to which ruling plaintiffs then and there excepted."

We think plaintiffs were entitled to examine Hargrove as to the contracts that had been made and the prices paid under them and to examine him as to any fact he knew which would throw light on the ultimate issue, the market value at the well, in order to search him out upon the point of market value, since he had the requisite knowledge. As to him, the questions about the contracts were not mere importations of those documents into the record, by way of mouth; they were an examination of him as to the basic question in the case, the market price at the wells of the gas in question. Assignment No. 23, raising this point, is sustained.

■ While, then, we agree with the District Judge in the view he took in the Arkansas Natural Gas Case and in this, that plaintiffs were entitled to receive for the gas the market price at the well and not the market price in the field, we agree with plaintiffs that they were not bound, in determining that market price, or, if there was no market price, the fair value at the well, by what defendant chose to pay them and others, Wall v. United Gas Public Service Co., 178 La. 908, 152 So. 561, but were entitled to inquire into what defendant sold gas for at the well, if it sold any there. If none was sold at the well and if there was no actual market price established day by day in the field, they were entitled, in proving the value at the well, to prove what defendant got for it day by day in the field. In doing this they and the defendant were entitled to have taken into consideration, under careful instructions to the jury, all the elements which entered into the price in the field, so as to carefully limit the value or price to be paid plaintiffs to that part of the price the gas sold for in the field, which, after proper deductions, represented the price at the well. On another trial the jury should therefore be carefully instructed, among other things, that the prices the producer is obtaining for gas under his pipe line contracts are not true daily market prices. They are prices paid under long-term contracts, entered into years before, and therefore having a bearing on the issue to be tried not as representing fixed daily market prices, but merely as aiding in arriving at a conclusion as to the fair value at the well, from day to day, of the gas taken from plaintiffs' well.

■ In determining market price or value a mere matter of opinion, in a case like this, fixed and rigid rules do not govern. The object and purpose of the inquiry in this case is to determine, (1) if it can be done, the daily market price at the well, or at the nearest market, less costs of getting it there. (2) If there is no daily market price, the object is to determine what the gas is actually worth at the well. In determining this, every factor throwing any light upon it may and should be considered. The factors of remoteness or of differences in circumstances attending the prices selected for comparison should be controlled by guiding, rather than by exclusionary rulings. These are the basic rights of the parties under the lease. Plaintiffs should have and defendant should pay them for one-eighth of the gas taken, the market value at the well if there was one, the actual value there if there was not. In determining this, every factor properly bearing upon its establishment should be taken into consideration. Included in these are the fixed royalties.

obtaining in leases in the field, considered in the light of their respective dates, the prices paid under the pipe line contracts, the conditions existing when they were made, and any changes of conditions; the end and aim in view being to ascertain, upon a fair consideration of all relevant factors, the fair value at the well of the gas produced and sold by defendant.

Appellee insists that without regard to the rulings on the exclusion of testimony, the judgment should be affirmed, because the proof shows a complete settlement, accord, and satisfaction. Berger v. Quintero, 170 La. 37, 127 So. 356. Cf. Yazoo & M. V. R. Co. v. Webb (C.C.A.) 64 F.(2d) 902.

We think it plain that the course given to the case by the contentions and rulings on the admissibility of evidence as to the pipe line sales prevented the full and proper development of this issue on which appellee insists that the case be affirmed, and that neither disposition of nor comment upon it is appropriate at this time. On another trial it can be fully developed and appropriate action then taken.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.