## SARTOR ET AL. *v.* ARKANSAS NATURAL GAS CORP.

No. 232.   Argued February 3, 1944.—Decided March 27, 1944.

*Mr. G. P. Bullis* for petitioners.

*Mr. Elias Goldstein,* with whom *Messrs. H. C. Walker, Jr., Leon O'Quin,* and *Arthur O'Quin* were on the brief, for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This litigation, begun a decade ago, has been terminated by a summary judgment, and whether rightly so is the issue.   The suit has weathered four adjudications, including two trials, in District Court and four decisions by the Court of Appeals.[1]   We will recite only such of its

---

[1] *Arkansas Natural Gas Corp.* v. *Sartor,* 78 F. 2d 924; *Arkansas Natural Gas Corp.* v. *Sartor,* 98 F. 2d 527; *Sartor* v. *Arkansas Natural Gas Corp.,* 111 F. 2d 772; *Sartor* v. *Arkansas Natural Gas Corp.,* 134 F. 2d 433.

history as bears on the issues as to summary judgment, since we consider no other question.

Sartors are landowners in Richland Parish, Louisiana, who in March of 1927 leased their lands for natural gas development. The lease, so far as here important, provides that ". . . the grantor shall be paid one-eighth (⅛) of the value of such gas calculated at the rate of market price and no less than three cents per thousand cubic feet, corrected to two pounds above atmospheric pressure . . ." For many years the lessee made settlement at the 3¢ rate. The suit was based upon the contention that during all of the years from 1927 to 1932 inclusive such market price was considerably above 3¢. At the last trial the court held that the claims for gas produced prior to the 20th of March, 1930 were barred by the statute of limitations or, as it is called in Louisiana, by prescription. The issues as to gas produced between March 20, 1930 and the commencement of the action were submitted to the jury, which returned a verdict: "We, the Jury, find for the Plaintiffs that the average price of gas at the well in Richland Parish, Louisiana, field during the period beginning March 20, 1930, and ending March 20, 1933, to be .0445 per 1,000 cu. ft. at 8 oz. pressure." The Circuit Court of Appeals affirmed "so far as the verdict of the jury fixed the market value of the gas upon which plaintiff is entitled to recover royalties." However, it reversed the ruling that part of petitioner's claims were barred by the statute of limitations and remanded the case for trial of the same issues as to market price of gas produced prior to March 20, 1930. The respondent-defendant then filed a motion for summary judgment under Rule 56. The motion was granted and the Court of Appeals affirmed.[2] The importance of questions raised under the summary judgment rule led us to grant certiorari.[3]

[2] 134 F. 2d 433.
[3] 320 U. S. 727.

The controversy, both as to whether there is a cause of action and, if so, in what amount, turns on whether the "rate of market price" during this period before March 20, 1930 was above 3¢ per m. c. f., as it is conclusively adjudged in this case to have been thereafter. It is held in Louisiana that the market price under such leases is to be ascertained at the wellhead, if there is an established market price at that point. Unfortunately, this rule requires that the price for royalty purposes be ascertained at a place and time at which few commercial sales of gas occur. The lessees who market this royalty gas along with their own production do not customarily make their deliveries at the wellhead but transmit gas from the several wells some distance in gathering lines, turning it over to larger buyers at points somewhat removed, and under conditions of delivery different from wellhead deliveries. The price producers receive at these delivery stations often is substantially above the 3¢ price to the landowner. The practice of fixing the price of landowner's royalty gas at one time and place and of marketing his gas for a different price at another delivery point raises the dissatisfaction and problems which produce this case.

The Court of Appeals, correctly we think, followed the Louisiana substantive rule that the inquiry in a case of this kind shall determine (1) the market price at the well, or (2) if there is no market price at the well for the gas, what it is actually worth there, and "in determining this actual value . . . every factor properly bearing upon its establishment should be taken into consideration. Included in these are the fixed royalties obtaining in the leases in the field considered in the light of their respective dates, the prices paid under the pipe-line contracts, and what elements, besides the value as such of the gas, were included in those prices, the conditions existing when they were made, and any changes of conditions, the end and aim of the whole inquiry, where there was no market price

at the well, being to ascertain, upon a fair consideration of all relevant factors, the fair value at the well of the gas produced and sold by defendant." [4]

The defendant asked a summary judgment because it averred "there exists no reasonable basis for dispute" that during the period in question there was a market price at the wells and that it did not exceed 3¢ per m. c. f. To sustain this position it filed affidavits, a stipulation of facts, and several exhibits. The plaintiffs resisted on the ground that the motion was inadequately supported on the face of defendant's papers. An affidavit by plaintiffs' counsel analyzed defendant's affidavits in the light of testimony given by the witnesses at prior trials; asserted that all were interested witnesses whose testimony was rejected on previous occasions; recited previous verdicts in the case; and setting forth affiant's experience in ten trials of this character arising out of leases in this field, asserted his knowledge of the market prices there and declared it to be more than 5¢ per m. c. f. at the wellhead.

It should be observed that the entire controversy here turns on questions of valuation. The only issue relates to market price or value of plaintiffs' gas at the time and place of delivery. If there has been no damage in the sense of failure to pay the full market price, then there is no cause of action, and if there has been damage in such sense, there is a cause of action.

The summary judgment rule provides that "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, *except as to the amount of damages*, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis supplied.) Where the undisputed facts leave the existence of a cause of action depending on

---

[4] 134 F. 2d 433, 434–35.

questions of damage which the rule has reserved from the summary judgment process, it is doubtful whether summary judgment is warranted on any showing. But at least a summary disposition of issues of damage should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party.

The defendant undertook to establish the absence of a triable issue by the affidavits of eight persons. It may be assumed for the purposes of the case that the witnesses offered admissible opinion evidence which, if it may be given conclusive effect, would sustain the motion. It will serve no purpose to review it in detail, and we recite only the facts which made it inconclusive. Affiant Harris was the Vice President and General Manager of the defendant, clearly an interested witness. Hunter was a lessee and the producer of gas with interests apparently similar to those of the defendant. Hargrove was Vice President of a gas pipeline company, owning leases and producing gas, which the plaintiffs' attorney by affidavit avers is defending on similar cases brought by these plaintiffs and others. Florsheim is an executive officer of two gas producing companies with similar interests to the defendant, and he avers that the price in the Richland field was never in excess of 3¢, although in this very case it is adjudged at one time to have been more. Stokes is the Chief Clerk of a producing company and recites that the records of his company show that "after deducting from the gross price realized by these various corporations for gas produced from the Richland gas field during the period 1928–1930 inclusive, the actual average unit cost of gathering and delivering the aforesaid gas, the net realization of those corporations from the sale of gas during aforesaid period did not exceed 3¢ per m. c. f." Waiving the question whether the contents of written records can thus be proved, it would hardly seem that a conclusion based on so complicated and indefinite a

calculation, should be accepted from an employee of a corporation with an interest in the market price of gas similar to the defendant's without opportunity to cross-examine. Feazel is another producer of oil and gas from many leases, who avers that the price paid never exceeded 3¢, notwithstanding the jury verdicts. McHenry is a lawyer and executive officer of a company operating gas properties with interests similar to the defendant's. Taylor is an officer of a similar producing company.

Apart from these, and contracts and leases useful only in connection with the testimony of these witnesses, defendant offered a bulletin of the Federal Bureau of Mines, which included a table showing the estimated value at the wells of gas produced in Louisiana to be 3¢ per m. c. f. in 1927 and 3.3¢ in 1928. In so far as state-wide statistics could have any value in proving the local market, this would seem to sustain the plaintiffs' contention that the price was over 3¢. Defendant also relied on a stipulation of facts. This stipulation recited a number of contracts for the sale of gas under various conditions, at various prices, some considerably in excess of 3¢. It also showed the cost of delivery from the wells to the point where these sales were made to be 0.3¢ per m. c. f. Much of the controversy, as will be seen from the prior history of the case,[5] is over the question whether these contract prices may be used in aid of the plaintiffs' case. Defendant uses these contracts only to explain their prices away by showing differences in market conditions. They do not establish the claim that there is a wellhead market price. The

---

[5] See *Arkansas Natural Gas Corp.* v. *Sartor*, 78 F. 2d 924 (appeal after first trial); *Sartor* v. *Arkansas Natural Gas Corp.*, 134 F. 2d 433 (decision below); cf. *Sartor* v. *United Gas Public Service Co.*, 84 F. 2d 436; *Sartor* v. *United Gas Public Service Co.*, 186 La. 555, 173 So. 103; *Pardue* v. *Union Producing Co.*, 117 F. 2d 225; *Driskell* v. *Union Producing Co.*, 117 F. 2d 229; *Hemler* v. *Hope Producing Co.*, 117 F. 2d 231.

stipulation also recites that about one-third of the leases in this area specify the royalty in substantially the same terms as the lease in suit, the rest providing for a fixed royalty of 3¢ per m. c. f. About 90 per cent of the payments to be based on market price have been made on the basis of 3¢, and the remaining 10 per cent at 4¢ per m. c. f. We certainly cannot rule as matter of law that the 4¢ price paid for 10 per cent of such royalty gas is not a factor to be considered by a fact-finding tribunal in fixing the market value, and is, or may be, some evidence to sustain plaintiffs' contentions.

To summarize the features of the defendant's motion papers:

1. The only evidence in support of defendant's contention as to the wellhead market price is opinion testimony of experts.

2. Each of them either is an officer of the defendant or is a lessee, or is an employee or officer of a lessee corporation, engaged like defendant in gas production, and each certainly is open to inquiry as to the truth of plaintiffs' attorney's sworn statements that each has interest in or bias as to the subject matter of this litigation.

3. Every one of defendant's witnesses had testified to the same general effect on the trial of the claim wherein the jury found against the testimony and the Circuit Court of Appeals affirmed the verdict.

4. Defendant undertook by its motion to show that it was beyond controversy that the 3¢ price prevailed constantly and not as a matter of averages for the entire period ended March 19, 1930, although prior trial had conclusively adjudged that on March 20, 1930 and thereafter the price or value averaged 4.45¢ as recited in the jury verdict. No evidence is presented of any sudden change, and no fact is offered to explain any change in the market and price of such gas. In fact any change is inconsistent with defend-

ants' position in the former trial, which was that at no time in either period had the market exceeded 3¢.

The Court of Appeals below heretofore has correctly noted that Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try. *American Insurance Co. v. Gentile Brothers Co.*, 109 F. 2d 732; *Whitaker v. Coleman*, 115 F. 2d 305. In the very proper endeavor to terminate a litigation before it for the fourth time, we think it overlooked considerations which make the summary judgment an inappropriate means to that very desirable end.

In considering the testimony of expert witnesses as to the value of gas leases, this Court through Mr. Justice Cardozo has said: "If they have any probative effect, it is that of expressions of opinion by men familiar with the gas business and its opportunities for profit. But plainly opinions thus offered, even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them. This is true of opinion evidence generally, whether addressed to a jury or to a judge or to a statutory board." *Dayton Power & Light Co. v. Public Utilities Commission*, 292 U. S. 290, 299. Cf. *Halliday v. United States*, 315 U. S. 94, 97; *Forsyth v. Doolittle*, 120 U. S. 73, 77; *McGowan v. American Pressed Tan Bark Co.*, 121 U. S. 575, 609; *Quock Ting v. United States*, 140 U. S. 417, 420; *Head v. Hargrave*, 105 U. S. 45, 50; *Union Insurance Co. v. Smith*, 124 U. S. 405, 423. The rule has been stated "that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony." *Spring Co. v. Edgar*, 99 U. S. 645, 658. ". . . the jury, even if such testimony

be uncontradicted, may exercise their independent judgment." *The Conqueror*, 166 U. S. 110, 131. ". . . the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact." *Sonnentheil* v. *Christian Moerlein Brewing Co.*, 172 U. S. 401, 408.

This Court has said: "The jury were the judges of the credibility of the witnesses . . . and in weighing their testimony had the right to determine how much dependence was to be placed upon it. There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of counsel, by which a jury are to be guided in determining the weight and credibility of his testimony. That part of every case, such as the one at bar, belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men; and so long as we have jury trials they should not be disturbed in their possession of it, except in a case of manifest and extreme abuse of their function." *Aetna Life Insurance Co.* v. *Ward*, 140 U. S. 76, 88.

We think the defendant failed to show that it is entitled to judgment as matter of law. In the stipulation, the bulletin, the affidavit of the plaintiffs' attorney and the admission of its witnesses, there is some, although far from conclusive, evidence of a market price or a value, under the rules laid down by the Court of Appeals, that supports plaintiffs' case. It may well be that the weight of the evidence would be found on a trial to be with defendant. But it may not withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony. And their credibility and the weight to be given to their opinions is to be deter-

mined, after trial, in the regular manner. The judgment accordingly is

*Reversed.*

MR. CHIEF JUSTICE STONE, dissenting:

It is not denied that the two courts below have correctly applied the state law governing the right to recover royalties on the particular type of gas lease here in question. By that law, in order to recover further royalty payments in excess of the 3 cents per 1,000 cubic feet of gas, which petitioners have already received, they must sustain the burden of showing that during the relevant period, the market price or value of the gas at the wellhead exceeded 3 cents. By Louisiana law also and upon principles of proof which it is also not denied that the courts below correctly applied, the "pipe line" price of gas, without qualifications and supplementary proof wholly lacking in this case, is not evidence of market price or value at the wellhead. Consequently, on the motion for summary judgment, the single issue was whether petitioners had any evidence by which they could sustain the burden resting on them of showing that during the relevant period, there was a market price or value of gas in excess of 3 cents at the wellhead.

True, Rule 56 (c) of the Rules of Civil Procedure excludes from the summary judgment procedure any issue as to the "amount of damages," where there is an admitted right of recovery but the amount of damages is in dispute. But the Rule does not exclude from that procedure the issue of damage *vel non* when that is decisive of the right to recover. This is made plain by subdivision (d) of Rule 56, which provides for a partial summary judgment and declares that the order shall specify the "facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in

controversy." Obviously, if it appears that there is no evidence of damage, the "amount of damages" is not in controversy and the court is not precluded from giving summary judgment for the defendant.

On the single issue here presented, whether petitioners' right to recover can be established by a showing of market price or value of the gas at the wellhead, in excess of 3 cents, respondent's affidavits and documentary evidence and a stipulation of facts show that all such sales of gas during the relevant period were at 3 cents or less. The affidavits also showed by opinion evidence of qualified experts, the disinterestedness of some of whom is not, on the present record, open to challenge, that the market price and value of the gas at the wellhead did not exceed 3 cents. To meet the prima facie case thus made out by respondent's papers, petitioners tendered only proof of pipe-line prices, each of which the state or federal courts had held in earlier cases to be no evidence of market price or value of the gas at the wellhead. See *Sartor* v. *United Gas Co.*, 186 La. 555, 559–569,[1] and cases cited.

It is irrelevant to any issue now presented that as to a later period, as the field more nearly approached exhaustion, a jury had returned a verdict sustained by the court below, by which it was found that the average market price or value at the wellhead was in excess of. 3 cents. Since this was the average for a three year period, it does not indicate any sudden advance in price, and is without probative force to show a market price or value in excess of 3 cents during the earlier period here in issue for which

---

[1] This suit, brought by the present petitioners, turned on precisely the issue here litigated—the market price of gas at the wellhead in the Richland field. The Louisiana Supreme Court said that the defendant lessee in that case "proved conclusively that the market price in these fields does not exceed 3 cents per thousand cubic feet." 186 La. 555, 569.

petitioners have tendered no probative evidence of a higher price.

Nor is it sufficient to raise a genuine issue here that it appears with respect to 3⅓% of the approximately 900 leases in the gas field, that settlements were made for royalties of 4 cents. Respondent's motion papers show, without contradiction, that these settlements "in almost every case" were compromises of disputes as to whether the lease in question had been properly developed, whether the lessor was entitled to a further royalty on gasoline recovered from the gas, or whether the lessee or lessor should bear the burden of a local severance tax. Such compromises of issues not present here furnish no indication of the market price or value at the wellhead, which alone is the issue decisive of this case.

Further, in the circumstances of this case, it is unduly restrictive of the summary judgment procedure to say that respondent's motion for summary judgment must be denied because it is supported *in part* by affidavits of interested expert witnesses who are not subject to cross-examination by the plaintiffs. Such an interpretation of the rule can hardly be invoked in behalf of petitioners here, who tender no probative evidence to challenge either the proof of actual sales at wellhead at 3 cents or less or the testimony of the experts, and who have not sought to avail themselves of the privilege afforded by Rule 56 (e) and (f) to take the experts' depositions or to offer the cross-examination of these witnesses at the former trials of this action. The summary judgment procedure serves too useful a function in terminating groundless litigation to warrant its limitation in a way which Rule 56 does not admit and on grounds so insubstantial.

On this state of the record both courts below have held that the issue whether petitioners have any proof tending to support the burden which rests on them to show

market price or value at the wellhead in excess of 3 cents, must be resolved against them. I think that the courts' conclusion is correct; that they properly applied the summary judgment procedure, and that the judgment should be affirmed.

MR. JUSTICE REED joins in this dissent.