Concettina B. BORDONARO, Administra-
trix, and United Aircraft Corpora-
tion, Plaintiffs-Appellants,

v.

WESTINGHOUSE ELECTRIC CORPO-
RATION, Defendant-Appellee.

No. 113, Docket 26187.

United States Court of Appeals
Second Circuit.

Argued Dec. 15, 1960.

Decided March 21, 1961.

Leo Parskey (of Parskey, Gross & Kline), Hartford, Conn., for plaintiff-appellant Concettina B. Bordonaro, Administratrix.

John R. Fitzgerald (of Davis, Lee, Howard & Wright), Hartford, Conn., of counsel, for plaintiff-appellant United Aircraft Corp.

John D. Fassett (of Wiggin & Dana), New Haven, Conn. (Frank E. Callahan, New Haven, Conn., of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and MAGRUDER and MOORE, Circuit Judges.

MAGRUDER, Circuit Judge.

This case was brought by the administratrix of the estate of Gordon S. Dayton under the provisions of the Connecticut Wrongful Death Act. Conn.Gen.Stat. § 3230d (1955 Supp.). Federal jurisdiction was based upon diversity of citizenship. The district court entered a summary judgment for the defendant dismissing the complaint; whereupon the plaintiff appealed.

Decedent was employed by United Aircraft Corporation as a "set-up man" for induction heating machines. The machine on which he was working on March 8, 1957, had been manufactured by the defendant, Westinghouse Electric Corporation, and sold by it in 1953 to United Aircraft Corporation. Because of the use of high voltage electricity, the machine could be very dangerous if operated

by one who was not adequately warned of the risks involved and the precautions to be taken. Those parts of the machine which convey electricity and are therefore dangerous to touch are enclosed within a metal cabinet which has two doors on each of two sides. The doors can be opened only by a key, and are fitted in such a way that upon opening of the door a push button, or an "interlock switch" located adjacent to the door latch, is released from its previously depressed position. In normal operation the release of this button will de-energize the plate contactor, which is then sprung open so as to remove the power from the high voltage circuits. Accidentally depressing the button will not cause the plate contactor to close. In addition to this device on each of the doors, the machine had two circuit breakers located on the outside of the cabinet above one of the doors on the left side of the machine. These circuit breakers were designed to be opened by hand, and when so opened both high and low voltages became inoperative. A red light on the front of the cabinet indicated that the high voltage circuit was "live."

Of course defendant lost control of the machine when it sold it in 1953 to United Aircraft Corporation. At that time defendant issued an instruction booklet which contained an explicit "high voltage warning" and which specifically warned against an operator's depending on the door switches or interlocks for protection. These warning instructions stated as follows:

"High Voltage Warning

"Operation of this equipment involves the use of high voltages which are dangerous to life. Operating personnel must at all times observe the following safety precautions:

"1. Do not change tubes or make adjustments inside the equipment with the high voltage on.

"2. Do not depend on door switches or interlocks for protection, but always shut down power equipment.

"3. Do not tamper with interlocks. Under no circumstances should any access door or safety interlock switch be removed, short circuited or tampered with in any way, except by experienced maintenance personnel.

"4. Do not service or adjust alone. No person should ever reach within the equipment for the purpose of adjusting or servicing without the presence of another person capable of rendering aid.

"5. Always remove power, discharge and ground circuits before touching them. Under certain conditions, dangerous potentials may exist in circuits, even with power off, due to charges retained by capacitors."

An instruction plate was affixed to the machine on the left side, which was the side normally opened for setting up. It read in part:

"To Stop Generator

"1. Press STOP button.

"2. For complete shutdown open both circuit breakers.

\* \* \* \* \* \*

"To make adjustments see instruction book."

Danger plates affixed to each side of the dividing panel inside the cabinet had the following; inscribed in red:

"Danger—Personal contact with operating voltages in this equipment is dangerous. Make sure all power has been removed before working on this equipment. Observe all safety instructions."

When decedent entered the right side of the cabinet on March 8, 1957, for the purpose of making an adjustment, the circuit breaker did not open and the button apparatus had failed to de-energize the high voltage circuit. Decedent was fatally injured when he touched a part of the machine conducting high voltage with a spanner wrench which he held in his right hand.

■ Considering the necessarily dangerous features of the machine, we do not think that the defendant could have been found negligent in the warning that it gave. But regardless of the adequacy of the warning, we think, as an alternative ground, that decedent was contributorily negligent as a matter of law, which was one of the grounds on which the district court granted defendant's motion for summary judgment. It is true that there was no showing that decedent had read the above safety instructions. There is no doubt that the operating directions were available for his use, and so far as appears he was entirely familiar with the machine, having set it up more than one thousand times over a period of several years.

Decedent's contributory negligence consisted not only in his failure to use the circuit breaker, or to notice that the red indicator light showed that the high voltage circuit was still active, but also in his failure to ground the capacitor before he touched it. Grounding is accomplished by the use of a "grounding stick." If decedent had used this grounding stick when he touched the capacitor, there would have been another indication that the high voltage circuit was "live." We agree with the district judge that the absolute reliance by the decedent upon the interlock system was such a disregard for his own safety that contributory negligence as a matter of law was made out. The instruction book made clear that the interlock system was not solely to be trusted, and decedent did not take any of the three available steps which would have advised him of its failure in this instance.

■ Plaintiff relies in part upon the fact that the Westinghouse representative who demonstrated the machine at the time of its sale in 1953 did not use the main circuit breaker or the grounding stick when making adjustments of the kind which decedent was engaged in at the time of the accident. But disregard of safety instructions by another who had no authority to alter them does not make decedent's conduct reasonable.

One of the defenses raised was the statute of limitations. The Connecticut wrongful death statute contains the somewhat unusual provision that any action under the statute shall be brought "within one year from the neglect or fault complained of." Section 3230d (1955 Supp.). Defendant delivered the machine several years before the accident, and all claims which might be based upon its alleged negligent manufacture were barred by the end of February, 1954. See Grabarek v. Connecticut Adamant Plaster Co., 1936, 4 Conn.Supp. 32; Vilcinskas v. Sears, Roebuck & Co., 1956, 144 Conn. 170, 127 A.2d 814. To avoid this statute of limitations, plaintiff relies upon the breach of defendant's "continuing duty" to warn the deceased. Since we hold that the plaintiff's case was defective on the merits, we shall not undertake to pass upon the correctness of this apparent circumvention of the Connecticut statute of limitations.

We rule that the district judge committed no error in granting defendant's motion for a summary judgment. The pertinent facts were undisputed, and the sole question before the court was whether the conclusions to be drawn therefrom were so clear that no reasonable men could differ on the result. As the Supreme Court said in Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967, "But at least a summary disposition of issues of damage should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party."

A judgment will be entered affirming the judgment of the District Court.