James S. **KREAGER** and Mercu-Ray Industries, Inc.

v.

Ralph L. **SCHIFFER**, Arthur Tuchinsky, Morrie Freed, Magna-Bond, Inc., and Progress Manufacturing Company.

Civ. A. No. 30235.

United States District Court
E. D. Pennsylvania.

Oct. 15, 1962.

Tyson W. Coughlin, and M. Carton Dittmann, Jr., Philadelphia, Pa., for plaintiffs.

Paul Shalita, of Adelman & Lavine, Philadelphia, Pa., for defendant Progress Manufacturing Co.

VAN DUSEN, District Judge.

This action is one to recover damages for breach of a written contract pertaining to the transfer of shares of stock of Mercu-Ray, the corporate plaintiff. The contract, which is attached to the Complaint as Exhibit A, is dated September 8, 1960, and was signed by plaintiff Kreager and one Joan Di Nocola, who signed on behalf of her "principals" stating that she was fully authorized to do so. The Complaint alleges that the individual defendants were the real parties to the agreement, that they were the "principals" referred to therein, and that they acted on their own behalf or, in the alternative, on behalf of and with the authorization of defendants Magna-Bond and Progress. It further alleges that the "principals and/or defendants Progress and Magna-Bond have not kept their agreements." Defendant Progress has moved for summary judgment, which motion is now before the court. The basic facts incident to the adjudication thereof are as follows:

In August and September 1960, plaintiff Kreager was the president of plaintiff corporation, Mercu-Ray, and owner of all outstanding shares of stock in the corporation. Mercu-Ray owns a certain patent pertaining to an electronic sign device suitable for use as a "point-of-purchase" display; said patent and several production models of the sign are the sole assets of Mercu-Ray. In 1960, Kreager, individually and on behalf of the corporation, obtained the services of one Alfred Morgan to act as a "finder" for the financing, marketing and production of the sign.

In August 1960, after an initial contact had been made with defendant Progress Manufacturing Company, Kreager met with one Harold Yoskin, Executive Vice-President of the Lighting and Building Products Division of Progress. Kreager demonstrated the sign to Yoskin and presented him with a copy of the pertinent patent, as well as with the manufacturing quotations outlining the cost of production of the sign. Defendant Freed, the Director of Purchases at Progress, was also present at this meeting. Yoskin stated that Progress did not have the means of marketing the sign, suggested that defendant Magna-Bond might be interested in that phase of the proposal, and asked Freed to contact Magna-Bond.[1] Defendant Freed thereupon called defendants Tuchinsky and Schiffer, who came directly to the Progress office and held a meeting in the conference room adjacent to Mr. Yoskin's office. Mr. Yoskin claims that Progress had no connection with the matter after the Magna-Bond representatives were called. This fact is definitely one in dispute. The plaintiffs state that Yoskin was present during the second meeting in the conference room and this position is supported by other sworn statements [see, e. g., Document No. 14 (Schiffer's Answers to Interrogatories), Document No. 43, pp. 12–13 (Schiffer's Deposition), Document No. 44, p. 18 (Tuchinsky's Deposition), Document No. 45, pp. 36–37 (Freed's Deposition), and Document No. 24 (Freed's Answers to Interrogatories)], although denied by Mr. Yoskin (see also, Morgan affidavit, Document No. 40). There is also dispute as to whether Freed actively participated in this meeting. In addition, Kreager states in his affidavit that after the meeting, Yoskin informed him that he was turning further negotiations over to Freed and that dealing with Freed would be the same as dealing with Yoskin and that Freed would carry the matter through.[2]

1. Plaintiff Kreager states in his affidavit (Document No. 38) that Yoskin stated that Progress would be interested in manufacturing and financing the sign.

2. This statement is vehemently denied by Mr. Yoskin, who states that it was put into the affidavit merely to raise an issue of fact for the purpose of defeating the

On September 8, 1960, Kreager, Morgan, Schiffer, Tuchinsky, Freed and others met in the Magna-Bond office. It was at this time that Exhibit A, which is the subject matter of this suit, was signed. Mr. Pincus, counsel for Magna-Bond, was present for part of the meeting and there is a dispute as to whether or not he, in fact, dictated the wording of Exhibit A. There are varying positions—some saying he dictated the whole document, others that he dictated part of it, and still others that Mr. Kreager dictated it in its entirety.[3] Joan Di Nicola signed it on behalf of her "principals." The term "principals" was also used in another part of the agreement. There is a dispute as to who asked her to sign and, of course, one of the ultimate questions is just who her principals were.[4] There is no agreement as to who suggested that she sign the agreement. Kreager states that at this meeting Freed assured him of Progress' financial backing.

After the agreement was signed, Freed was active in other matters concerning this matter. He made telephone calls, sent Mr. Zegel, the Vice-President of Progress Webster Electronics Corporation, an affiliate of defendant Progress, to New York to confer with Kreager and examine the sign and advise about the manufacturing. He discussed the meeting with Mr. Zegel after he returned to Philadelphia and then he, Zegel, Tuchinsky, and Schiffer met and discussed the situation at Magna-Bond's offices. He made other telephone calls and also went to New York with Mr. Tuchinsky to meet an employee of Plymouth Securities to discuss financing of the situation. Kreager states that he was acting all the time as a representative of Progress, with authority, or apparent authority, to bind them. It is Progress' position that his activities were not known to Progress, that Progress was also unaware of Zegel's activities as to the matter, and that he had neither authority nor apparent authority to bind Progress.

The record contains sufficient genuine disputes as to material fact that a motion under F.R.Civ.P. 56 may not be granted. Bragen v. Hudson County News Company, 278 F.2d 615 (3rd Cir., 1960). As the United States Supreme Court stated in Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, at page 627, 64 S.Ct. 724, at page 728, 88 L.Ed. 967 (1944):

"* * * Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."

The statement of facts as presented supra is not all inclusive as to the disputed facts, but it states many of them. As can be seen from said statement, it is not only the averments in paragraph 9 of the Kreager affidavit (Document No. 38) which are disputed but there are also many others which must be resolved. It is not the function of the judge who is considering a Motion For Summary Judgment to decide factual issues. The argument of Progress that there is no way in which Progress can be held liable because of the letter from Kreager to Yoskin, which is attached to Mr. Yoskin's

Motion For Summary Judgment. His position is that, although the disputed fact is material, it is not genuine and, therefore, should not be used to defeat the Motion.

3. Compare Documents Nos. 38, 43, 44 and 45 on this point. Mr. Kreager states in his affidavit that Mr. Pincus was ill and could not be deposed prior to August

1962. His deposition, which might be very valuable in this case, was never taken.

4. Another important question is the meaning of the agreement, since some defendants say that it was just meant as an option. Mr. Kreager states that there was a contemporaneous, oral agreement fixing the amount of capital to be gotten.

affidavit (Document No. 41), is rejected. This letter could be interpreted in several ways and it is not clear that a fact finder would have to find against Mr. Kreager's claim against Progress just because this letter was written.[5]

## ORDER

AND NOW, October 15, 1962, after consideration of the foregoing Motion, the attached briefs of counsel, oral argument, and the record, IT IS ORDERED that Progress Manufacturing Company's motion for summary judgment is denied.

---

5. Compare this case with Pittsburgh Railways Co. v. Equitable Life Assur. Soc., 288 F.2d 640 (3rd Cir., 1961). Having found the presence of a genuine dispute as to material facts, it is unnecessary to consider the further question of whether defendant Progress would be entitled to judgment on the facts as presented by plaintiffs if no disputed facts were on record.