499 So.2d 210 (1986)
E.W. MERRITT, Jr., Frank P. Merritt, Marie Joiner Merritt, Marguerite Merritt and Wilfred Merritt Richardson, Plaintiffs-Appellees,
v.
SOUTHWESTERN ELECTRIC POWER COMPANY, Defendant-Appellant.
No. 18133-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
Order November 4, 1986.
*211 Hargrove, Guyton, Ramey and Barlow by A.L. Wedgeworth, III, Scott C. Sinclair, Shreveport, for defendant-appellant, Southwestern Elec. Power Co.
Goff, Caskey, Davis & Fallin by C. Glenn Fallin, Arcadia, for plaintiffs-appellees, E.W. Merritt, Jr., et al.
Before MARVIN, SEXTON and NORRIS, JJ.
Per Curiam Order November 4, 1986.
SEXTON, Judge.
In this oil and gas suit, the defendant-appellant, Southwestern Electric Power (hereinafter SWEPCO), appeals from the trial court judgment in favor of the plaintiffs-appellees, E.W. Merritt, Jr., Frank P. Merritt, Marie Joiner Merritt, Marguerite Merritt and Wilfred Merritt Richardson (hereinafter Merritts), decreeing that compression charges were not deductible from future royalty payments and further decreeing that previously deducted compression charges from plaintiffs' royalty payments be refunded. We reverse.
This case concerns the interpretation of the royalty clause in a Louisiana oil, gas and mineral lease form, Bath's Form Louisiana Spec. 14-BR1-2A-PX 10-65.
On January 22, 1976, the Merritts, plaintiffs-appellees, granted in favor of Guye Corley an oil, gas and mineral lease covering approximately 520 acres of land in Section 7, Township 17 North, Range 6 West, Bienville Parish, Louisiana. Subsequently, Guye Corley assigned said lease to SWEPCO on January 26, 1976. The lease is currently in effect and the Merritts' property is included within a producing unit which was formed with respect to the L.J. Lathan Estate, No. 1 Well (hereinafter "Lathan Well"). Each one of the Merritts owns a .040625 royalty interest under the Lathan Well.
The gas produced from the Lathan Well is sold to Louisiana Gas Purchasing Corporation (now PGC Pipeline, a division of LPC Energy, Inc. and hereinafter referred to as LGPC) pursuant to a gas purchase contract executed by and between SWEPCO and LGPC as of May 1, 1978. Pursuant to Article 8.1 of the Gas Purchase Contract, the gas from the Lathan Well is delivered to LGPC at a point located in the SW¼ of Section 12, Township 17 North, Range 7 West, Bienville Parish, Louisiana. This delivery point lies outside of the premises covered by the Lease, as well as outside the premises covered by the unit established for the Lathan Well.
The parties have stipulated that the Lathan Well is a producing well which has suffered a decline in the production pressure causing a decline in the flow pressure from the Lathan Well into the gathering system. The parties have stipulated further that compression of the gas produced from the Lathan Well was, and remains, necessary to maintain a flow pressure sufficient to flow gas from the gathering system into the LGPC pipeline. Without the compression, the Lathan Well is capable of production but does not provide sufficient pressure to effect a sale of the gas produced. Therefore, in April 1978, the compressor serving the E.F. Courtney Well, a nearby well connected to a gas gathering system, began serving both the E.F. Courtney Well and the Lathan Well. In January, 1980, SWEPCO replaced the aforementioned *212 compressor with a new compressor which served the E.F. Courtney Well, the Lathan Well and the L. Courtney Well, a third well connected to a gathering system. Later, in December of 1983, SWEPCO removed the compressor and replaced it with three separate compressors on each of the three wells. Because of mechanical difficulties with the compressor on the Lathan Well, that compressor was replaced by SWEPCO in March, 1984.
In December, 1983, SWEPCO began charging the Merritts, royalty owners, for compression costs.[1] These charges were based upon the quantity of gas which passed through the compressor during a given period. Neither the Lease nor the Division Order expressly permitted or prohibited such a deduction.
Subsequently, the Merritts filed suit on November 19, 1984, against SWEPCO seeking dissolution of subject oil, gas and mineral lease, double the amount of royalties withheld (due to compression charge deduction owed under said lease), interest, reasonable attorney's fees, and costs. On October 17, 1985, the parties submitted a Stipulation of Facts,[2] presenting the trial court with the sole issue of whether the charges for compression of gas (to raise the flow pressure of the gas above that of the pipeline) are properly deductible from the plaintiffs' royalty payments which are to be based only on market value at the well.
The trial court rendered a judgment on January 17, 1986, in favor of the Merritts, plaintiffs, and against the defendant, SWEPCO, decreeing that compression charges were not deductible from future royalty payments and further that previously deducted compressor charges from plaintiffs' royalty payments be refunded. The trial court rejected plaintiffs' other demands for dissolution of the lease, double the amount of royalties withheld, interest and attorney's fees. SWEPCO perfected this suspensive appeal. Appellants' three assignments of error present the single issue of whether the ruling of the trial court on the compression charges at issue is correct.
The trial court noted in its Reasons for Judgment that under Article 80 of the Louisiana Mineral Code "mining or drilling and production costs" are not deductible from the royalty owner's share unless the parties agree otherwise. The trial court also noted that transportation costs, on the other hand, are deductible from the royalty owner's share. Determining that the Louisiana Mineral Code did not define the terms "production costs" or "transportation costs," the trial court sought assistance from Louisiana jurisprudence on this issue to no avail.
The trial court then looked for an express reference to compression costs either in the Lease or the Division Order. Finding none, the trial court relied on jurisprudence *213 from other jurisdictions which have expressly dealt with compression charges. The trial court then concluded, "Other jurisdictions seem to lean toward not deducting such compression costs from royalty" and, accordingly, held that the compression charges in the instant case are not deductible from royalty payments.
Appellant contends that the trial court ignored the parties' Stipulation of Facts by suggesting that the Lathan Well could not produce without compression.
The essence of plaintiffs' contention is found in the following statement contained in plaintiffs' trial court brief.
... unless a compressor remains on the Lathan well, SWEPCO will be unable to market the gas produced.
In determining whether compression charges are deductible from the lease and royalty provisions therein, the lease must first be examined to ascertain the point at which the royalty clause fixes the price of the gas. The controlling royalty provision is found in paragraph three of the lease and provides as follows:
3. The royalties to be paid by Lessee are: ... (b) on gas, including casinghead gas, or other gaseous substance produced from said land and sold or used off the premises or for the extraction of gasoline or other products therefrom, the market value at the well of one-eighth of the gas so sold or used.... [Emphasis added].
Louisiana jurisprudence has applied a reconstruction approach to determine market value. Under this approach, market value is reconstructed by beginning with the gross proceeds from the sale of the gas and deducting therefrom any additional costs of taking the gas from the wellhead (the point of production) to the point of sale. Wall v. United Gas Public Service Company, 178 La. 908, 152 So. 561 (1934). The appellees here are entitled to receive one-eighth (1/8) of the total gas delivered (produced) to the mouth of the well or the market value thereof. Thus, if compression charges are necessary in order for the well to produce, i.e. for the gas to reach the wellhead, then such charges are not deductible from royalty payments. If, on the other hand, the compression charges are necessary only to push the gas from a producing well into the pipeline, then this cost is a post-production or marketing cost and is therefore deductible from royalty payments.
Accordingly, the royalty is free of all costs up to this point of production, while subsequently incurred costs are to be borne on a pro rata basis between operating and non-operating interests. Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944), rehearing denied, 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593 (1944); Martin v. Glass, 571 F.Supp. 1406 (N.D.Tex.1983), affirmed 736 F.2d 1524 (5th Cir.1984); Freeland v. Sun Oil Company, 277 F.2d 154 (5th Cir.1960); Wall v. United Gas Public Service Company, supra.
The trial court was bound to follow the parties' Stipulation of Facts, which included the following stipulation:
7.3 Compression of the gas produced from the Lathan Well was, and remains, necessary to maintain a flow pressure in the gathering system in excess of 700 Psig. Without the compression, no gas produced from the Lathan Well could be sold to LGPC.
There was no purchaser or market for the gas as it existed at the wellhead because of its low pressure. Accordingly, there was no market for the gas "at the mouth of the well." In order to market the gas, it first had to be compressed. Thus, the gas was useless and had no market value at the wellhead until it could be moved into the gathering line by compression.
The federal court in Freeland v. Sun Oil Company, supra, construed Louisiana law applicable to the royalty provisions in a market value lease which was almost identical to the royalty provision in the case above. In holding that extraction costs are deductible from royalty payments under a market value lease, the court stated:

*214 The principle is much more pervading than the lessors would recognize. It is not, as they claim, limited to the extraction cost necessary to make an absolutely worthless thing (gas) into something of value. It stands for the proposition that in determining market value costs which are essential to make a commodity worth anything or worth more must be borne proportionately by those who benefit. To put it another way: in the analytical process of reconstructing a market value where none otherwise exists with sufficient definiteness, all increase in the ultimate sale value attributable to the expenses incurred in transporting and processing the commodity must be deducted. The royalty owner shares only in what is left over, whether stated in terms of cash or in product. In this sense he bears his proportionate part of that cost, but not because the obligation (or expense) of production rests on him. Rather, it is because that is the way in which Louisiana law arrives at the value of the gas at the moment it seeks to escape from the wellhead. [Footnote omitted.] Id. at 159.
In a case directly on point, Martin v. Glass, supra, affirmed 736 F.2d 1524 (5th Cir.1984), the court concluded that compression is an element of the marketing function as it is a
separate and independent step, once or more removed from production, and as such is a post-production expense, and the lessee is entitled to a pro rata reimbursement. Id. at 1416.
It should be noted that while Martin involved the application of Texas law, the Martin court relied heavily on Freeland, supra, construing Louisiana law, and noted that Texas and Louisiana law are the same in that both jurisdictions allow the deduction of post-production costs when the royalty payment is determined "at the mouth of the well."
Jurisprudence applying Louisiana law has determined that various types of costs constitute additional marketing expenses which entitle the lessee to deduct proportionately such costs from royalty payments. See Wall v. United Gas Public Service Company, supra, (transportation costs); Phillips Petroleum Company v. Johnson, 155 F.2d 185 (5th Cir.1946); (transportation and separation costs); Sartor v. United Gas Public Service Company, 84 F.2d 436 (5th Cir.1936) (transportation costs); Crichton v. Standard Oil Company of Louisiana, 178 La. 57, 150 So. 668 (1933) (extraction costs); Coyle v. Louisiana Gas & Fuel Company, 175 La. 990, 144 So. 737 (1932) (extraction costs); and Freeland v. Sun Oil Company, supra (processing costs). Moreover, the Supreme Court in Sartor v. Arkansas Natural Gas Corporation, supra, expressly noted that in determining a gas royalty payable "at the well," Louisiana law provides for a proportionate deduction of costs of gathering and delivering the gas to a pipeline system.
The lessee cannot be taxed with the whole cost of marketing the gas. Wall v. United Gas and Public Service Company, supra 152 So. at 564. This principle is further supported by the fact that the comments under Article 122 of the Louisiana Mineral Code suggest that the lessee has an implied obligation to market minerals discovered and capable of producing in paying quantities. Since marketing the minerals benefits both the lessee and the royalty owner, the royalty owner should bear a proportionate share of the marketing costs. Production is futile without distribution of the product.
Unless the parties agree otherwise, the cost of marketing gas once it has been produced is shared by the lessor and lessee under a market-value lease. Crichton v. Standard Oil of Louisiana, supra. Since no express provision to the contrary is found in the Lease, Division Order, or any other contractual agreement between the parties, the compression costs incurred subsequent to production of the Lathan Well may be proportionately deducted from the royalty payments. See Note, "Costs Deductible by the Lessee in Accounting to *215 Royalty Owners for Production of Oil or Gas," 46 La.L.Rev. 895 (1986).
In conclusion, we reverse the trial court and hold that the compression costs at issue were post-production costs and as such were properly deductible from appellee's royalty payments under this particular Louisiana lease form. The demands of the plaintiffs are rejected.
REVERSED.
PER CURIAM.
Since this opinion was handed down, it has come to our attention that we neglected to assess costs in reversing and rejecting the demands of the plaintiffs-appellees. Costs are hereby assessed against said plaintiffs-appellees.
NOTES
[1] As per their Stipulation of Facts, the parties agreed that SWEPCO did not begin to charge the Merritts for compression until December, 1983 for two reasons:

First, prior to December, 1983, SWEPCO was unaware that compression charges were deductible from royalty under the Lease. SWEPCO is a working interest owner or an overriding royalty interest owner in several wells operated by third party operators. Some of these third party operators began deducting compression charges from SWEPCO's royalty checks. In the fall of 1983, SWEPCO investigated the issue of deducting compression charges and acquired advice from legal counsel in Texas that, under standard lease provisions similar to those contained in the Lease, a lessor-royalty owner, as well as a working interet (sic) owner, is liable and may be charged for his proportionate share of compression costs. Soon after receiving such advice, SWEPCO began deducting compression charges from payments it made to both working interest owners and royalty owners.
The second reason for SWEPCO not deducting compression charges prior to December 1983 is that it was not until December 1983 that a compressor was installed to service only the Lathan Well. Prior to December of 1983, the compressors serving the Lathan Well also served the E.F. Courtney Well and/or the L. Courtney Well. Attempting to deduct compression charges prior to December 1983 would have caused allocation and accounting problems.
[2] No other evidence was submitted by the parties.