SEXTON, Judge Pro Tem.
| TPefendant EOG Resources, Inc. (“EOG”), appeals a judgment of the trial court finding that transportation costs of natural gas from the well to purchasers could not be charged against the Plaintiffs lessors’ royalty interest under a mineral lease. The court further held that the standard form Bath lease (“Lease”) was ambiguous because the Lease contains references to a rider that was not attached to the Lease filed into evidence. The trial court ordered an accounting without deductions of transportation costs. For the reasons set forth herein, we reverse the judgment of the trial court and render judgment in favor of EOG.

FACTS

Plaintiffs Bobby and Elizabeth Culpep-per are lessors, as successors-in-interest, under a 1985 mineral lease granted to the predecessor-in-interest of EOG. As stated, the Lease is a standard Bath oil and gas lease, which provides for a royalty on all natural gas produced by EOG, to be computed as follows:
(b) on gas, including casinghead gas, or other gaseous substance produced from said land, when sold by Lessee, [3/16ths] of the amount realized by Lessee computed, at the mouth of the well, or when used by Lessee off said land or in the manufacture of gasoline or tother products, the market value, at the mouth of the well, of [3/16ths] of such gas so used[-]
(Emphasis ours.)
In addition, the Lease references an attached rider to the Lease, which was not physically attached when the document was filed into evidence. The reference to a rider is found in the section of the Lease containing the legal description of the land subject to the Lease and again in the blank where the |2name of the financial institution is to be inserted for deposit of the Lessors’ royalty payments. EOG maintains that the referenced rider is actually several lines added to paragraph 18 of the *1143 Lease which appear in larger and bold typeface.[1]
Since obtaining the Lease, EOG has produced natural gas from the wells on the Culpeppers’ lease and the cost of transportation of the natural gas to purchasers has been subtracted as a deduction from gross revenue in computing the “value at the mouth of the well” in determining the royalty due the Culpeppers. The Culpeppers filed the instant suit seeking “an accounting ... insofar as the transportation deduction is concerned.” The matter was tried by joint stipulation of facts with the sole issue being whether or not transportation costs are properly deductible from gross revenues in computing a lessor’s royalty payment. As stated, the trial judge concluded that such costs were not proper deductions and, further, that the Lease at issue is ambiguous because the referenced rider was not attached to the Lease. This appeal by EOG ensued.

DISCUSSION

A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals in consideration of the payment of a |srental or bonus. La. R.S. 31:114; Stephenson v. Petrohawk Properties, L.P., 45,296 (La.App.2d Cir.6/2/10), 37 So.3d 1145. Like contracts in general, a mineral lease is the law between the parties and regulates their respective rights and obligations. Stephenson, supra. The general rules of contract interpretation apply when interpreting contracts involving mineral rights. Id., citing Blanchard v. Pan-OK Production Co., Inc., 32,764 (La.App.2d Cir.4/5/00), 755 So.2d 376, writ denied, 00-1297 (La.6/23/00), 765 So.2d 1043.
The determination of whether a contract is clear or ambiguous is also a matter of law. Stephenson, supra. Ambiguity exists as to the parties’ intent when the contract lacks a provision on the issue or when the language of the contract is uncertain or fairly susceptible to more than one interpretation. Id.
In the case sub judice, the contract language at issue is the determination of the royalty payable upon gas production “computed at the mouth of the well.” The question is whether that language contemplates a deduction for transportation costs of the gas from the well to the purchaser. This court, in Merritt v. Southwestern Electric Power Co., 499 So.2d 210 (La.App.2d Cir.1986), recognized that Louisiana law allows the deduction of post-production costs when the royalty payment is determined “at the mouth of the well.” In Merritt, we held that compression costs are an example of such post-production costs and reversed the trial court’s finding that such costs should not be shared by a lessor. We explained in Merritt:
... that there was no market for the gas “at the mouth of the well.” In order to market the gas, it first had to be compressed. hThus, the gas was useless and had no market value at the wellhead until it could be moved into the gathering line by compression.
*1144 While it is transportation costs, rather than compression costs, at issue herein, applying the above reasoning yields the same result. The presence of gas at the wellhead is of no value until it is marketed and transported to the purchaser. Indeed, we explained in Merritt that courts of our state have “determined that various types of costs constitute additional marketing expenses which entitle the lessee to deduct proportionately such costs from royalty payments.” Merritt, supra, citing Wall v. United Gas Public Service Co., 178 La. 908, 152 So. 561 (1934) (transportation costs); Phillips Petroleum Co. v. Johnson, 155 F.2d 185 (5th Cir.1946), cert. denied, 329 U.S. 730, 67 S.Ct. 87, 91 L.Ed. 632 (1946) (transportation and separation costs); Sartor v. United Gas Public Service Co., 84 F.2d 436 (5th Cir.1936) (transportation costs); Crichton v. Standard Oil Co. of La., 178 La. 57, 150 So. 668 (1933) (extraction costs); Coyle v. La. Gas & Fuel Co., 175 La. 990, 144 So. 737 (1932) (extraction costs); and Freeland v. Sun Oil Co., 277 F.2d 154 (5th Cir.1960) (processing costs). We reiterate our statement from Merritt that production is futile without distribution of the product. Merritt, supra. Accordingly, “the royalty is free of all costs up to [the] point of production, while subsequently incurred costs are to be borne on a pro rata basis between operating and non-operating interests.” Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Freeland v. Sun Oil Co., supra; Wall v. United Gas Public Service Co., supra.
[¿Further, article 80 of the Mineral Code defines a mineral royalty interest, explaining that “unless expressly qualified by the parties, a royalty is a right to share in gross production free of mining or drilling and production costs.” La. R.S. 31:80 (Emphasis ours.). The comments to article 80 recognize the distinction between production costs and post-production processing costs, in which the lessor shares at his ratable interest or for which the parties can specifically provide in the lease agreement. Here, there was no provision in the Lease governing the payment of post-production processing expenses, i.e., transportation costs; therefore, the Lessors must bear their proportionate share of those expenses. Accordingly, we find that the trial judge legally erred in holding that post-production transportation costs were not proper deductions in computing the royalty (at the mouth of the well) owed to the Culpeppers under the Lease.
In addition, we disagree with the trial judge’s conclusion that the Lease was ambiguous. As previously discussed, the references to an attached rider appear in two places in the standard form lease in this case: in the legal description of the land and in the blank for the name of a financial institution in which the royalty payments are to be deposited. EOG suggests that the added portion of paragraph 18 constitutes the rider. In any case, there is no indication and there has been no allegation that any such rider has any relevance to the computation of royalties under the Lease. The additional language following paragraph 18 is not relevant to royalty computation. See footnote no. 1, supra.
| ¿In summary, we find the Lease to be clear and unambiguous. The computation of a royalty “at the well” has been long-held by our courts to include deductions for post-production costs.

DECREE

For the foregoing reasons, the judgment of the trial court in favor of Bobby L. and Elizabeth W. Culpepper and remanding for an accounting without transportation costs is reversed. Judgment is rendered *1145 in favor of EOG Resources, Inc., rejecting the demands of the Plaintiffs at their cost.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, DREW, LOLLEY & SEXTON, JJ.
Rehearing denied.

. Paragraph 18 reads as follows (the bold type is the alleged rider):
This lease shall be binding upon all who execute it, whether or not named in the body hereof as Lessor, and without regard to whether this same instrument, or any copy thereof, shall be executed by any other Lessor named above. ATTACHED TO AND MADE A PART OF THAT CERTAIN OIL, GAS AND MINERAL LEASE DATED FEBRUARY 8, 1985 BETWEEN ERMON B. McCONATHY, ET AL., LESSORS, AND FRANKS PETROLEUM INC., LESSEE, AND COVERING 181.00 ACRES, MORE OR LESS, ALL IN THE NORTH HALF OF SECTION 19, TOWNSHIP 16 NORTH, RANGE 4 WEST, Bienville Parish, Louisiana.