**Harry CALDWELL, Plaintiff,**

v.

**WILSON FREIGHT FORWARDING COMPANY and Wilson Freight Company, Defendant, and Third-Party Plaintiff,**

v.

**DURO PAPER BAG MANUFACTURING COMPANY, Third-Party Defendant.**

Civ. A. No. 69–559.

United States District Court,
W. D. Pennsylvania.

Jan. 11, 1971.

**44**

Donald J. Lee, Dougherty, Larrimer, Lee & Hickton, Pittsburgh, Pa., for plaintiff.

Richard L. Rosenzweig, Rosenzweig & Rosenzweig, Pittsburgh, Pa., for defendant Wilson.

Thomas A. Lazaroff, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for third-party defendant Duro.

## OPINION

GOURLEY, District Judge:

This is a negligence action in which jurisdiction is founded upon diversity of citizenship. The action arises out of an accident occurring in Pittsburgh, Pennsylvania, on July 30, 1968, wherein the automobile which plaintiff was driving collided with a tractor-trailer. The immediate matter before the Court is a Motion for Summary Judgment filed by original defendant Wilson Freight Company (Wilson)[1]. In the Motion, Wilson contends the undisputed facts demonstrate that the driver of the tractor-trailer unit in question was subject to the exclusive control of third-party defendant Duro Paper Bag Manufacturing Company (Duro), and not Wilson, at the time of the accident.

The Motion was heard before this member of the Court on September 18, 1970. No affidavits were offered, and the Court relies in its determination upon the parties' Answers to Interrogatories and the testimony of certain witnesses taken upon oral deposition. Upon review of the evidence developed in pretrial discovery thus far, the Court concludes that the Motion should be denied.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment only shall be granted upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling upon a motion for summary judgment, all inferences of fact must be drawn against the movant and in favor of the party opposing the motion. 6 Moore's Federal Practice, § 56.15(3) at p. 2337. The similarity between the request for summary judgment and the request for a directed verdict has been observed, and it has been said that "a summary disposition * * * should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." Sartor v. Arkansas Natural Gas Co., 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944).

Upon a Motion for Summary Judgment, both the opposing and moving party are entitled to any presumption that is applicable to the facts before the Court. 6 Moore's Federal Practice, § 56.15(3), at p. 2343. In diversity cases, a presumption accorded a conclusive effect by the forum state is deemed to be substantive law within the meaning of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and a federal court clearly is bound to apply such a presumption when applicable to the case before it. However, Professor Moore recommends that presumptions accorded a lesser effect by the forum state also be applied by the federal courts since such presumptions may be determinative of the outcome of the case. 5 Moore's Federal Practice, § 43.08 at p. 1363.

In the instant case, answers to plaintiff's Interrogatories filed by both original defendant Wilson and third-party defendant Duro reveal that the tractor unit involved in the collision carried upon its door the name of defendant Wilson. It is settled Pennsylvania law

---

[1] Although it is not entirely clear from the pleadings, it would appear that the name of Wilson Freight Forwarding Company, an Ohio corporation, was changed to Wilson Freight Company at a time prior to the accident. The original defendants appear to be one and the same entity and are represented by single counsel.

that the presence of a defendant's name on a commercial vehicle raises a rebuttable presumption that the vehicle is owned by said defendant and that the driver of the vehicle is a servant of said defendant acting within the scope of his employment. Sefton v. Valley Dairy, 345 Pa. 324, 326, 28 A.2d 313 (1942); Young v. Wilky Carrier Corporation, 54 F.Supp. 912, 914 (E.D.Pa.1944). This presumption alone is sufficient under Pennsylvania law to take the case to the jury "unless the evidence to the contrary is clear, positive, credible, uncontradicted and so indisputable in weight and amount as to justify the court in holding that a verdict against it must be set aside as a matter of law." Hartig v. American Ice Co., 290 Pa. 21, 27, 137 A. 867, 869 (1927). Oral testimony rebutting the presumption, even though uncontradicted, is not sufficient to justify removal of the case from the jury; additional "physical" evidence is required. Hartig v. American Ice Co., supra, at pp. 27–28, 137 A. 867. According the aforesaid presumption the same effect it would be given by a Pennsylvania forum, the Court must consider whether the undisputed facts of record are sufficient to overcome the presumption and to warrant removing the case from the jury.

To rebut the presumption, defendant Wilson relies in great part upon the depositions of S. David Shore, who performs duties of general management for Duro, and Victor Surma, who was driving the tractor-trailer at the time of the accident. Shore testified upon deposition that he is Chairman of the Board of Directors of Duro and is responsible for the general management of the Company. Shore also is a Director, Vice-President and shareholder of Wilson. He stated that he usually spent four or five hours a day at Duro and one hour a day at Wilson but disclaimed any management responsibilities on behalf of Wilson.

Duro is engaged in both the manufacture and shipment of paper bags. Wilson is a common carrier engaged in interstate commerce and customarily has transported goods for Duro. It was Shore's testimony that, acting on behalf of Duro some two years before the date of the accident, he had made an arrangement orally with Harry Travis, Manager of Wilson's Pittsburgh Terminal, whereby Duro was permitted to station a Duro tractor at said terminal for use by Duro whenever a trailer containing Duro products was delivered "piggyback" or by railroad to the Pittsburgh area. It was provided by Travis that, on such occasions, the Wilson dispatcher would hire a driver for the Duro tractor on a daily basis from a local hiring hall and would issue appropriate instructions to him. However, the driver would be paid with a Duro check, signed by Travis as an authorized agent of Duro. Also, Duro maintained responsibility for all repairs to the Duro tractor stationed on the Wilson premises.

Wilson received no compensation for the space occupied by the Duro tractor or for the services of its dispatcher in securing a driver for the Duro tractor and in issuing instructions to him. Travis received no formal compensation from Duro but did receive an annual Christmas gift from Shore. Wilson neither leased nor made available parking space at its Pittsburgh terminal for vehicles other than the Duro tractor. Shore acknowledged that he was able to secure such an arrangement with Travis by virtue of his position as Director and Vice-President of Wilson.

On the day in question, the Duro tractor was inoperable. A B&O-Reading trailer containing Duro products had been delivered by railroad to the Pittsburgh area. Its ultimate destination was Fox Grocery, Belle Vernon, Pennsylvania. Victor Surma testified upon deposition that he was called at the hiring hall by the Wilson dispatcher. On previous occasions he had driven both Wilson tractors in the employment of Wilson and the Duro tractor "for Duro." Upon his arrival at the Wilson terminal on the day in question, he was advised by the dispatcher that he was driving "for Duro" but that he was to use a Wilson

tractor since the Duro tractor was inoperable. Although defendant Wilson asserts in its Answer that the use of the Wilson tractor was unauthorized by Wilson, third-party defendant Duro asserts to the contrary.

Using the Wilson tractor, Surma picked up the loaded B&O-Reading trailer at the B&O Station. Surma stated that, to obtain the trailer, he signed a form lease designating B&O as lessor and Wilson as lessee of the trailer. Surma then drove the rig to Belle Vernon and unloaded the Duro products there. He was returning to the B&O Station with the empty trailer when the accident occurred. As had previously been the custom when Surma drove the Duro tractor, Surma was paid for his services on the day in question by a Duro check, signed by Travis as agent.

Wilson's liability turns upon whether Surma was its servant at the time of the accident in question. Not only must he have been subject to Wilson's control or right of control with regard to the particular service he was engaged to perform and the manner of performing it but also the service must have been performed on the business of Wilson or for its benefit. Yorston v. Pennell, 397 Pa. 28, 39, 153 A.2d 255 (1959). Much of the foregoing evidence tends to rebut the presumption that Surma was the servant of Wilson at the time of the accident in question. However, the evidence as a whole is not of such a clear and indubitable character as would warrant removing the issue from the jury. The evidence is largely oral testimony, the credibility of which appropriately is to be evaluated by the jury. Gojkovic v. Wageley, 278 Pa. 488, 490, 123 A. 466. It is not apparent from the facts whether Wilson endorsed the arrangement which Shore had with Travis. Also, facts are sparse which would indicate whether the Wilson dispatcher himself was subject to the specific directives of Wilson or Duro with respect to the hiring of a driver and the issuance of instructions to him under Shore's arrangement. For these reasons, the Motion must be denied.

An appropriate order is entered.

## ORDER

Now, this 11 day of January 1971, it is hereby ordered that defendant-Wilson Freight Company's Motion for Summary Judgment be and the same is hereby denied.