Fred J. RUSSELL, Plaintiff,

v.

MID–EAST OIL COMPANY and Charles M. Griffith, Defendants.

Civ. A. No. 76–259.

United States District Court, W. D. Pennsylvania.

Aug. 5, 1976.

Herbert B. Sachs and Richard H. Martin, Pittsburgh, Pa., Richard H. Kleindienst, Washington, D. C., for plaintiff.

Hurd Baruch, McCann, Garland, Ridall & Burke, Pittsburgh, Pa., for defendants.

## MEMORANDUM ORDER

WEBER, District Judge.

The plaintiff brought suit against the Defendants for selling interests in natural gas ventures in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, and the common law of misrepresentation. Charles M. Griffith has served as President of Mid-East Oil Company (hereinafter "Mid-East") at all times relevant to the above matter.

Russell has alleged that Griffith on two occasions, in trying to induce him to purchase participating leases in gas wells, affirmatively represented that Mid-East was at all times an owner, would continue to be an owner, and would always become an owner (with respect to future participations) of individual interests in each and every participation then issued or to be issued. Russell further avers that Griffith knew these representations were false and materially misleading and that Russell would rely on them in deciding to invest. Complaint ¶ 10. Finally, Russell alleges that Griffith told him that Mid-East would be impelled by its investment in the wells to insure their profitability.

■ Although the Defendants do not dispute that Mid-East never owned any interest in the gas wells, they move for summary judgment pursuant to F.R.Civ.P. 56 on the grounds that the Plaintiff's claim is barred by the statute of limitations in that Russell knew that Mid-East had no interest in the spring of 1974, more than one year before the complaint in the above matter was filed on February 26, 1976. In causes of action seeking recovery for fraud, the statute of limitations begins to run when the plaintiff discovers the fraud. The Defendants assume that the applicable statute of limitations is one year (the correctness of which we need not now decide) and conclude that because Russell evidently knew that Mid-East was not an owner and, consequently, that Griffiths alleged representations were false, more than a year before he filed his complaint, his claim is now barred by the one year statute of limitations.

The Defendants move for Summary Judgment on the issue of when Russell discovered that Mid-East owned no interest in the gas wells. The Defendants assert that their Motion for Summary Judgment should be granted because there is "no genuine issue as to the material fact" of when Russell learned that Griffith's representations were false. In support of their Motion, the Defendants lean heavily on the Plaintiff's negative answer to the following, cryptic question posed to him on cross examination during his deposition.

Q Was there any information you received between the spring of 1974 and the filing of your lawsuit against Mid-East which corroborated your intimation that Mid-East was not an investor in the other wells?

A No.

Additionally, the Defendants mention two letters and one memorandum concerning Mid-East's involvement in the acquisition and drilling of the natural gas ventures which Russell allegedly saw in 1973 and 1974 as further indicative of his knowledge.

On the other hand, the Plaintiff states in his Complaint that he did not discover that Mid-East never had any interest in the gas wells until "sometime in early 1975." Complaint, ¶ 34. Further, Russell affirms in an affidavit filed August 2, 1976 that he did not learn of the failure of Mid-East to invest until March 12, 1976, the date the Defendants filed their Answer.

Rule 56(c) states in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ The acid test as to whether there is any "genuine issue as to any material fact" is that a moving party is entitled to summary judgment if the materials before the court would require a directed verdict in his favor unless the opposing party produces

evidentiary material that show there is a triable issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141 (3rd Cir. 1972); *Cousins v. Yaeger*, 394 F.Supp. 595 (E.D.Pa.1975); *Caldwell v. Wilson Freight Forwarding Co.*, 322 F.Supp. 43 (W.D.Pa.1971).

We are first required, in applying the foregoing test, to decide whether the evidence on which the Defendants rely would sustain a motion for a directed verdict. The motion for summary judgment and the motion for a directed verdict are integrally related: the crux of both theories is that no genuine issue of material fact remains to be determined by the fact finder. 6 Moore's Federal Practice ¶ 56.02[10] at 43 (1975). As Justice Jackson stated in *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944):

> a summary disposition of issues of damage should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for a moving party.

321 U.S. at 624, 64 S.Ct. at 727.

Thus, to grant the Defendants' Motion for Summary Judgment is to decide that the jury "would not be entitled to disbelieve" that, on the basis of Russell's deposition response and the other correspondence, Russell knew for more than one year before he filed his complaint that Mid-East owned no interest in certain gas wells. The deposition response, so critical to the success of the Defendants Motion, occurs in the midst of a series of inquiries on cross examination as to why Russell did not seek to investigate for himself who were the real owners of the gas wells. The question does not ask Russell, in a point-blank way, whether he knew in the spring of 1974 that Mid-East did not own any interest in the wells. Instead, the examiner asks whether

Russell "received any information" between the spring of 1974 and the filing of the present lawsuit which "corroborated" his "intimation" that Mid-East was not an investor in the other wells.[1] A more veiled, equivocal, and indirect question would be difficult to draft. The question does not ask whether Russell's "knowledge was confirmed" but whether his "intimations were corroborated." Quite simply, the question and answer are not a clear exposé of what Russell knew, leaving no "genuine issue of material fact" in its wake. We find that the jury would be entitled to disbelieve this evidence as probative of Russell's knowledge.

The Defendant's also claim that two letters and one memorandum—which they attach to their Motion as Exhibits B, C, and D—establish that Russell knew that Mid-East was not an owner of the gas wells. The first, marked Exhibit B, is a letter from Russell to attorney James Callas On July 11, 1973, in which the Plaintiff seeks advice as to whether the assignment by Mid-East of the ⅜ths interest in the Richardson-Rupert gas well is satisfactory. The most remarkable statement in the letter that one could strain to construe as indicative that Russell knew that Mid-East was not an owner is the sentence: "Mid-East decided not to drill an additional well." On the other hand, the letter appears to indicate that Russell believed that Mid-East owned a ⅜ths interest in the Rupert lease, an impression consistent with Russell's purported belief that Mid-East was involved in the venture. Exhibit C, a letter from G.O. Scott Vice-President of the Peoples Natural Gas Company, to Fred Russell on March 6, 1974, attached to which was a letter from Scott from Daniel Delaney, attorney for the DeHavens, who owned the land subject to the lease. The Delaney letter contains no statement of implication that would inform a reasonable man that Mid-East was not an

---

1. The word "intimation" apparently refers to following question and answer, which occurred before the question and answer cited by the Defendant in support of his Motion.

> Q. Did you get the impression in the course of discussing the assignment of the remaining interests in the DeHaven well that Mid-East owned none of those remaining interests?
>
> A. I gained some impression from that. At least, it raised the question.

owner of the well properties; to the contrary, the letter indicates that Mid-East completed a gas producing well on the premises but apparently decided to abandon the well on or about March 27, 1973.

The letter also discloses that on October 2, 1973 Defendant Griffith informed the DeHavens that he would attempt to sell the abandoned well to another operator and that he would attempt to have Mid-East "clean up around the well as soon as possible." Delaney indicates that his clients, the DeHavens, want their property returned to them in its original condition. The reference to "cleaning up the well" apparently refers to repairing damage to the property caused by drilling.

Finally, Exhibit D, a memorandum from D. B. MacTavish, one of Russell's employees, dated April 18, 1974 found in Russell's files, indicates that MacTavish phoned defendant Griffith and told him that "we", apparently referring to the Plaintiff's enterprise, did not want to purchase an interest in the DeHaven well.

Neither the letters nor the memorandum, taken separately or together, convincingly attribute to Russell the knowledge that Mid-East had no interest in the venture; quite to the contrary, these materials indicate that Mid-East was actively involved in the acquisition and drilling of the Richardson-Rupert and DeHaven gas wells and thus tend to corroborate Griffiths alleged representations to Russell that Mid-East had invested in the venture and was concerned about its profitability. Quite clearly, a jury would be entitled to disbelieve that the letters and the memorandum proved that in the spring of 1974 Russell knew that Mid-East held no ownership interest in the wells. Consequently, since we could not direct a verdict for the Defendants, we cannot now grant summary judgment.

But even if this Court were to find that a verdict could be directed, we would be bound to follow the second branch of the controlling rule, *viz.,* to inquire whether the affidavit produced by Russell in response to the Defendants' Motion creates a triable issue of fact; if it does, the Motion for Summary Judgment must be denied, despite that the Defendants merit a directed verdict on the basis of the evidentiary material they have produced.

*When* at the hearing on the motion for summary judgment *there is contradictory evidence,* or the movant's evidence is impeached, *an issue of credibility is present,* provided that the contradicting or impeaching evidence is not too incredible to be believed by reasonable minds. 6 Moore's pt. 2 ¶ 56.15[4] at 523–24 (1976). The general and well settled rule is that *the court should not resolve a genuine issue of credibility* at the hearing on the motion for summary judgment, whether the case be a jury or court case; and *if such an issue is present the motion should be denied* and the issue resolved at trial by the appropriate trier of the facts, where, to the extent that witnesses are available, he will have the opportunity to observe their demeanor.

(emphasis added)

*Id.* at 519.

In his affidavit, Russell declares that he did not discover "or obtain any knowledge relative to the failure of Mid-East Oil Company to invest in any of the subject gas wells until the defendants' Answer was filed herein." Russell affidavit ¶ 3. At the very least, we must consider Russell's affidavit sufficient to create "a genuine issue as to a material fact." When the probative weight of the affidavit is compared with that of the evidence the Defendants have proffered so far, it would appear to foreclose the issue. However, defendants are entitled to test the oral testimony on cross-examination.

Accordingly, the Defendants' Motion for Summary Judgment is DENIED.