KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in *1202 granting a summary judgment to one of the defendants.
City Bank & Trust Company of New Iberia, Louisiana, and American Bank & Trust Company of Lafayette, Louisiana (hereinafter referred to as plaintiffs) brought suit against New Iberia Hotel Partners (hereinafter referred to as NIHP), a Louisiana partnership in commendam, on a promissory note executed by NIHP, and also against the partners of NIHP, as guarantors of the promissory note executed by NIHP. In the alternative, plaintiffs’ suit included a demand against Executive Quarters of New Iberia (hereinafter referred to as EQNI), another Louisiana partnership in commendam, on various promissory notes executed by EQNI, and also against the partners of EQNI, as guarantors of the promissory notes executed by EQNI. The trial court granted a summary judgment, dismissing plaintiffs’ demands against EQNI and its partners with prejudice at plaintiffs’ costs. Plaintiffs appeal the trial court’s granting of summary judgment dismissing its claims against EQNI and its partners. We reverse and remand.
FACTS
EQNI, a Louisiana partnership in com-mendam, which consists of seven partners, was formed for the purpose of building and operating a hotel in Iberia Parish, Louisiana to be known as “Executive Quarters of New Iberia.” EQNI executed a series of promissory notes (hereinafter referred to as hand notes), in favor of plaintiff, City Bank & Trust Company, who was participating with the plaintiff-American Bank & Trust Company in the loan, totalling $1,766,169.27 in principal, with the proceeds from this loan to be used to pay for the construction of the hotel. As security for the payment of these hand notes, EQNI executed and pledged two collateral mortgage notes, one dated December 4, 1981, in the amount of $1,700,000.00, and the other, dated October 27, 1982, in the amount of $800,000.00. Both of these collateral mortgage notes were secured by Acts of Collateral Mortgage affecting the hotel and the land upon which the hotel was built. Additionally, each partner of EQNI executed an act of continuing guaranty to further secure EQNI’s debts.
Though the record before this Court does not make the matter perfectly clear, it appears that EQNI and the partners of EQNI were having difficulty meeting their obligations with respect to the payment of the hand notes. Consequently, it was decided that a second partnership would be formed to purchase the land and hotel from EQNI and to pay off the debt of EQNI. New Iberia Hotel Partners, a Louisiana partnership in commendam, was then formed, and consisted of the original seven partners of EQNI, and seven additional partners. On December 29, 1982 EQNI sold the land and hotel to NIHP, subject to the outstanding mortgages, liens, and encumbrances on the property, and NIHP then began operating the hotel.
On December 29, 1982, NIHP executed a promissory note, which was also a hand note, in favor of plaintiff-City Bank & Trust Company in the principal amount of $2,005,000.00. This promissory note was secured by a pledge of another collateral mortgage note executed by NIHP in the same amount, which was secured by an Act of Collateral Mortgage given by NIHP and affecting the hotel and the land upon which the hotel was built. Each of the fourteen partners of NIHP also executed an act of continuing guaranty to secure the debt of NIHP. Plaintiff-American Bank & Trust Company again also participated by purchasing an interest in the NIHP loan.
On June 4, 1984, plaintiffs filed suit against NIHP and the partners of NIHP, and in the alternative against EQNI and the partners of EQNI.[1] Plaintiffs’ petition *1203 requested judgment in their favor against NIHP and its partners in the amount of $2,376,195.07, plus interest, attorney’s fees and court costs, and sought recognition of the collateral mortgage executed by NIHP, and for recognition of the acts of continuing guaranty executed by the fourteen partners of NIHP. In the alternative, and only in the event that the trial court should find that the debt of NIHP was not enforceable, plaintiffs prayed for judgment in their favor against EQNI and its partners in the amount of $1,766,169.27, plus interest, attorney’s fees and court costs, and for recognition of the two collateral mortgages executed by EQNI and for recognition of the acts of continuing guaranty executed by the seven partners of EQNI.
EQNI and NIHP both filed answers and reconventional demands seeking relief against plaintiffs’ claims. NIHP contends that the note of NIHP secured by the pledge of its collateral mortgage notes and guarantee of NIHP’s partners, given to plaintiffs on December 29, 1982 is invalid and unenforceable on numerous legal grounds. EQNI contends that its debt to plaintiffs was paid on December 29, 1982 by novation when the plaintiffs took NIHP’s note in payment of EQNI’s debt. Additionally, EQNI and NIHP both filed motions for summary judgment. After conducting a hearing, the trial court denied the motion for summary judgment of NIHP and granted the motion for summary judgment of EQNI, and ordered plaintiffs’ demands against EQNI dismissed with prejudice. A judgment was signed on January 11, 1985. Plaintiffs have suspen-sively appealed and contend that the trial court erred in finding that EQNI was entitled to a summary judgment based on the evidence before the court.
LAW
Our Louisiana Supreme Court discussed summary judgments in considerable length in the case of Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981), and stated that:
“A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Mashburn v. Collin, 355 So.2d 879 (La.1977). To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Adickes v. S.H. Kress & Co., supra; Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The papers supporting mover’s position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden. Adickes v. S.H. Kress & Co., supra; 6 Moore’s Federal Practice, § 56.15[3].” Vermilion Corp. v. Vaughn, 397 So.2d 490, at page 493 (La.1981).
Also see Bonstill v. Goldsberry Operating Co., 478 So.2d 729 (La.App. 3rd Cir.1985); Richard v. Weill Const. Co., Inc., 446 So.2d 943 (La.App. 3rd Cir.1984), writ den., 449 So.2d 1356 (La.1984). Plaintiffs argue that there is a genuine issue of material fact as to whether the EQNI debt owed to them was paid by novation on December 29, 1982, by the execution and substitution of the NIHP promissory note secured by the pledge of the collateral mortgage note and continuing guaranty of the partners of NIHP, which was given by NIHP to them *1204 for payment of EQNI’s debt, and that for this reason contend that the trial court’s granting of the summary judgment against them was improper.
The following codal articles are applicable:
LSA-C.C. Art. 2185:
“Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place.”
LSA-C.C. Art. 2190:[2]
“Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt.”
The general rule is that the new obligation must be valid and binding in order to replace the former obligation and thus effect a novation. Tucker v. Stone, 115 So.2d 636 (La.App. 2nd Cir.1959). Therefore, if the new obligation does not come into existence, a novation does not take place, and the debt which the novation would have extinguished subsists. Planiol Civil Law Treatise, Vol. 2, Pt. 1, No. 537 (Louisiana State Law Institute 1959).
In this case, the evidence in the record makes it clear that' the plaintiffs, EQNI, and NIHP all intended for NIHP’s execution of the promissory note in favor of plaintiffs to effectuate a novation and thereby extinguish EQNI’s debt to plaintiffs. In fact, Mr. George Pabst, Jr., Senior Vice President and Chief Executive Officer of plaintiff-City Bank & Trust Co. testified in a deposition that EQNI’s loan was considered as having been paid on December 29, 1982, the date that NIHP executed the promissory note in the amount of $2,005,000.00 in favor of plaintiff-City Bank & Trust Co. However, Mr. Pabst further testified that the hand notes executed by EQNI were not shown as paid on the Bank records until May 31, 1983 because of additional documentation that was needed. It is this very delay and the reasons for the delay that NIHP contends make its notes given on December 29, 1982 invalid. Although plaintiffs and the partnerships, EQNI and NIHP, all intended for a novation to occur, there is a question of material fact as to whether a novation ever did occur (i.e., whether or not the note and documents signed by NIHP on December 29, 1982 and given to plaintiffs were effective between the parties) by the substitution of a new valid and binding debt for the old debt.
In its Answer and Reconventional Demand, NIHP asserts that the collateral mortgage note, the act of collateral mortgage, and the hand note, which were all signed on December 29, 1982 and given to plaintiffs, were without agreement regarding the terms and conditions of the loan underlying them and therefore were given without consideration. NIHP therefore asserts that its alleged debt to plaintiffs is unenforceable. Also, in the record is a copy of a letter dated May 12, 1983 from Mr. Pabst to Mr. E. Mitchell Harber, who is the general partner of both EQNI and NIHP, which states in part:
“I am writing pursuant to your request with reference to City Bank and American Bank’s understanding concerning the refinancing of the present outstanding loan to Executive Quarters. This loan is to be paid out with a new loan executed by a group of investors known as New Iberia Hotel Partners.” (Emphasis added.)
Additionally there is in the record a copy of a letter from Mr. Harber to Mr. Pabst, dated June 1, 1985 in which Mr. Harber, the general partner of NIHP, states that the terms and conditions upon which plaintiffs funded the NIHP loan were not acceptable to NIHP, and remain unacceptable.
We conclude that there is a genuine issue of material fact as to whether or not the promissory note executed by NIHP on December 29, 1982 and given to plaintiffs *1205 effected a novation of EQNI’s indebtedness to plaintiffs, and for this reason the trial judge therefore erred in granting summary-judgment dismissing plaintiffs’ demands against EQNI.
For the foregoing reasons, the judgment of the trial court is reversed and set aside and the case is remanded to the trial court for further proceedings. All costs of this appeal are taxed against defendant-appellant-EQNI.
REVERSED AND REMANDED.

. This suit was consolidated for trial with other suits entitled "City Bank & Trust Co. v. New Iberia Hotel Partners,” No. 54235, Our Docket Number 85-292, and "City Bank & Trust Co. v. New Iberia Hotel Partners," No. 54488, Our Docket Number 85-294. Both of these consolidated suits resulted in judgments which were also appealed to this Court with this consolidated suit. However, both of these consolidated suits were settled before hearing on appeal and *1203 the issues presented by those appeals are not before this Court at this time.

. LSA-C.C. Articles 2185 and 2190 were amended effective January 1, 1985. For the subject matter of these former articles, see the current LSA-C.C. Articles 1879 et seq.