WHITTINGTON v. DURANT H.M.A.
2022 OK 97
Case Number: 116794
Decided: 12/06/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 97, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

KINION WHITTINGTON, D.O., Plaintiff/Petitioner,
v.
DURANT H.M.A., LLC, Defendant/Respondent.
CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION 3; ON 
APPEAL FROM THE DISTRICT COURT OF BRYAN COUNTY
Honorable Mark R. Campbell, District Judge
¶0 The issue on appeal is whether the trial court abused its discretion by relying on an attorney's controverted affidavit to prove bad faith litigation conduct and whether the trial court had before it sufficient evidence to support the trial court's award of attorney fees based on maintaining or defending an action in bad faith. The trial court concluded that Durant's litigation conduct was "done in bad faith, was oppressive, vexatious and willful," and sanctioned Durant to pay Plaintiff's attorney fees and costs. The COCA reversed the trial court order in its entirety. We previously granted the petition for certiorari, and now vacate the COCA decision and reverse the trial court's granting of attorney fees and costs.
THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE DISTRICT 
COURT'S JUDGMENT ON ATTORNEY FEES IS REVERSED.
Steven M. Harris and S. Max Harris, Doyle Harris Davis & Haughey, Tulsa, Oklahoma, for Plaintiff/Appellee.
Ryan T. Scharnell, Conner & Winters, LLP, Tulsa, Oklahoma, for Defendant/Appellant.
GURICH, J.
¶1 This appeal requires us to determine whether the trial court abused its discretion in granting a fee award by relying on an attorney's controverted affidavit to prove bad faith litigation conduct. We conclude that an attorney's affidavit is sufficiently credible without supplemental testimony. However, the alleged egregious litigation conduct did not rise to the level necessary to prove bad faith or to award attorney fees and costs as a sanction for that conduct. The trial court's determination that Durant conducted itself in bad faith was clearly erroneous. Accordingly, the Court vacates the decision of the COCA and reverses the decision of the trial court.
Facts and Procedural History
¶2 Durant H.M.A., LLC ("Durant"), an Oklahoma limited liability company, is a general acute care medical center in Durant, Oklahoma. Durant is owned by local physicians, including Dr. Kinion Whittington (Plaintiff) who holds 470 ownership units, and Community Health Systems Professional Services Corporation ("CHSPSC"), a Delaware limited liability company.
¶3 Prior to filing suit, Plaintiff's counsel contacted the attorney for Durant and requested to view and copy several business records maintained by Durant as authorized by (B). Specifically, Plaintiff requested Durant's unaudited financial records for years 2013-2015 and a copy of the Fair Market Value Analysis of Durant HMA, LLC d/b/a Medical Center of Southeastern Oklahoma, dated September 11, 2015 (the "Valuation"). Due to Durant's continued refusal to provide the requested records, Plaintiff filed suit in the trial court on June 8, 2016. Plaintiff sought an injunction ordering Durant to produce the Valuation, and also sought damages and a declaratory judgment against Durant based on the violation of its duties under section 2021(B).
¶4 On June 16, 2016, after litigation had been commenced but prior to service of the suit upon Durant, Durant furnished the unaudited financial records for years 2013-2015, but continued to refuse to provide the Valuation. Durant maintained that the Valuation was obtained by and at the expense of CHSPSC and it was therefore the private property of CHSPSC, not Durant. Accordingly, Durant argued that it had no authority or duty to provide the report to Plaintiff pursuant to . Eventually, however, Durant procured consent from the contracted evaluator and CHSPSC to share the Valuation with Plaintiff, and forwarded a copy of the Valuation to Plaintiff on August 30, 2016.
¶5 On October 11, 2016, Durant moved the trial court to dismiss Plaintiff's lawsuit as moot because Durant produced the Valuation. Plaintiff objected to the motion to dismiss, arguing that production of the Valuation was an admission of Durant's violation of section 2021(B) and that the case was not moot. Plaintiff combined this objection with a motion for partial summary judgment. On December 29, 2016, the trial court denied Durant's motion to dismiss and granted partial summary judgment in Plaintiff's favor.
¶6 On December 27, 2016, Plaintiff requested additional documents including a request to inspect and copy all contracts and related documents between Durant and Durant Anesthesia Associates, LLC ("DAA"). Counsel for both parties met to discuss and clarify the request. Unable to resolve the issue, Plaintiff amended his petition on March 28, 2017, to include allegations concerning the DAA contract. Plaintiff filed a second motion for summary judgment on May 5, 2017. Durant filed a combined response and counter-motion for partial summary judgment. The motions were argued to the court in June 2017, and on July 3, 2017, the trial court entered an order sustaining Plaintiff's second motion for summary judgment and denying Durant's counter-motion for partial summary judgment.
¶7 After the trial court's granting of summary judgment in his favor, Plaintiff filed several applications for fees and costs relying on the inherent equitable authority of the trial court to award fees and costs for litigation misconduct addressed in City National Bank & Trust Co. v. Owens, , . Plaintiff further asked the trial court to enhance an award of fees by applying factors found in Burk v. City of Oklahoma City, , . In the alternative, Plaintiff asked for the statutory maximum damages of $10,000.00 allowed by . Plaintiff attached itemized fee records and other supporting documentation to his application for attorney fees and costs, which included declarations from Plaintiff's counsel, Steven M. Harris and S. Max Harris, made pursuant to . The second application for attorney fees and costs included further itemized fee records and again contained the affidavits of Plaintiff's counsel Steven M. Harris and S. Max Harris. In the second iteration of S. Max Harris's affidavit, however, Harris included an additional paragraph which asserted that during a conversation with Durant's counsel, Ryan Scharnell, Scharnell disclosed a bad-faith reason for seeking an immediate ruling on Durant's motion to dismiss. Durant disputed the allegations and contended its actions were made in good faith. The parties agreed to bifurcate entitlement to fees and costs from the actual amount incurred.
¶8 The hearing on the entitlement portion of Plaintiff's motion was heard on October 3, 2017, and the trial court issued its order granting Plaintiff's motion for attorney fees and costs on October 10, 2017. The subsequent hearing on the damages portion of Plaintiff's motion for attorney fees and costs took place on January 16, 2018. At the hearing, the trial court heard expert witness testimony presented by Plaintiff and Durant as to the reasonableness of the attorney fees. On January 26, 2018, the trial court concluded:
Defendant's [Durant's] conduct in their opposition to the Plaintiff's claims was done in bad faith, was oppressive, vexatious and willful. More specifically, Defendant's conduct caused Plaintiff to needlessly expend money on legal fees and costs to obtain information that he was legally entitled to have.
Based on the foregoing, Plaintiff is entitled to his attorneys' fees and costs. Accordingly, the court hereby awards Plaintiff $51,582.50 in attorneys' fees and $2,865.41 in costs. 
¶9 Durant timely appealed from the trial court's decision awarding fees and costs and the case was assigned to the COCA. The COCA reversed the trial court's award of fees and costs, holding that "[a]lthough the court ultimately found that [Plaintiff] was entitled to the documents he sought, that conclusion was not clear at the outset. Both parties acknowledge there is little authority interpreting section 2021(B), and the language of the statute opens the possibility for disagreement regarding the reviewability of company documents." The COCA also held that "[Plaintiff's] counsel's self-serving affidavit, without more, is not enough to support a finding of bad faith or vexatious, wanton, or oppressive litigation misconduct." Relying on Poafpybitty v. Skelly Oil Co., , ¶ 17, , 438, the COCA held that the trial judge erred by not requiring supplemental testimony to support S. Max Harris's self-interested affidavit--an issue the COCA raised sua sponte. Finally, because Durant complied with most of Plaintiff's requests, the COCA did not consider its litigation strategy oppressive. Plaintiff petitioned this Court for a writ of certiorari, arguing that the COCA misapplied Poafpybitty and contradicted Oklahoma's Rules of Evidence. We granted Plaintiff's Petition for Certiorari.
Standard of Review
¶10 Evaluation of the correctness of the trial court's imposition of attorney fees and costs as a sanction requires an abuse-of-discretion review. Hammonds v. Osteopathic Hosp. Founders Ass'n, , ¶ 6, , 322. Abuse of discretion occurs where "discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." Patel v. OMH Med. Ctr. Inc., , ¶ 20, , 1194.
Analysis
USE OF THE ATTORNEY'S AFFIDAVIT WAS NOT ERROR
¶11 Title 12, section 421 of the Oklahoma Statutes approves three acceptable modes for taking witness testimony: by affidavit; by deposition; and by oral examination. Undoubtedly, an affidavit is a statutorily approved mode of taking testimony. State ex rel. Okla. Bar Ass'n v. Dobbs, , ¶ 38 & n.44, , 51 & n.44. In this case, to support an award of Plaintiff's attorney fees and costs, Plaintiff's counsel, Harris, provided an affidavit stating that Durant's counsel, Scharnell, disclosed that Durant was acting in bad faith. Harris asserted that during a conversation with Scharnell, Scharnell revealed that Durant wanted an immediate ruling on its motion to dismiss so that if Plaintiff made subsequent requests for corporate documents pursuant to (B), Plaintiff would be forced to file additional lawsuits. Durant refuted this allegation, rebutting Harris's affidavit with an offer of proof from Scharnell which disputed the contents of the alleged conversation with Harris. Durant also produced emails which refuted Harris's account. These issues were heard by the trial court on October 3, 2017 and, notably, Durant made no objection to the use of Harris's affidavit to support Plaintiff's application for attorney fees and costs. ¶12 Due to the COCA's reliance, in part, on Poafpybitty for reversing the decision of the trial court, a closer look is required. In Poafpybitty, a summary judgment proceeding, this Court discounted an affidavit provided by the Vice-President of the defendant company in support of its position. Poafpybitty was a complex case wherein the trial court sustained a summary judgment motion in favor of Skelly Oil Company and denied recovery to plaintiffs for oil royalties for vented casinghead gas. The judgment for Skelly was affirmed on appeal. In considering the sufficiency of the evidence submitted in support of Skelly's motion, the Court both accepted and rejected parts of the affidavit of L.L. Byars, Skelly Oil Company's Vice-President. In reliance on the case of Sartor v. Arkansas National Gas Corp., which dealt with Rule 56 of the Federal Rules of Civil Procedure, the Court in Poafpybitty observed:
in considering the affidavit of an interested witness, the fact of his interest in the result of a suit is sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact. We add, however, that such strictness of consideration does not apply to a statement in an affidavit that is uncontroverted and has indication of support elsewhere in the record. We thus preserve the salient reason for the use of affidavits in summary judgment matters, i.e., placing before the court important matter that may aid in avoidance of a useless trial.
, ¶ 17, 517 P.2d at 438. The statement in Poafpybitty has been interpreted as recently as 2012 to mean that an affiant's interest in the outcome of a suit is enough to require the testing of his or her credibility before the trier of fact. We also note that since Poafpybitty was decided, the use of affidavits in summary judgment proceedings was expanded and explained in .
¶13 However, in this case we are not faced with the use of an affidavit in a summary judgment, but rather in a proceeding where the court is the trier of fact. In attorney-fee proceedings for sanctions based upon oppressive behavior, the trial judge is factfinder. Walker v. Ferguson, , ¶¶ 14-15, , 147. As factfinder, the trial judge determines fact questions and weighs credibility of witnesses and evidence. The affiant in this case is an attorney bound by the Oklahoma Rules of Professional Conduct, which require a duty of candor toward the tribunal. While there may be penalties for deceitful affiants, the penalties for attorneys are higher. If an attorney submits an untruthful affidavit, not only could they lose their case, they could lose their license to practice law. Further, attorney representations to the courts are governed by the Oklahoma Pleading Code, which likens such representations to reasonable certifications of credibility. Because Plaintiff presented Harris's testimony in an acceptable mode--by affidavit--it was sufficient for the factfinder's consideration without supplemental testimony by oral examination. The trial judge heard the relevant issues as the trier of fact during oral argument on Plaintiff's application for attorney fees and costs and, therefore, the trial court committed no error in relying on the affidavit of plaintiff's counsel.
THE TRIAL COURT'S DETERMINATION THAT DURANT ACTED IN BAD
FAITH WAS AN ABUSE OF DISCRETION.
¶14 In Oklahoma, the right of a litigant to recover attorney fees is governed by the American Rule. TRW/Reda Pump v. Brewington, , ¶ 13, , 22. This Rule is firmly established in Oklahoma and provides that courts are without authority to award attorney fees in the absence of a specific statute or a contractual provision allowing the recovery of such fees, with certain exceptions. Id. This Court has ruled that exceptions to the American Rule are narrowly defined. Barnes v. Okla. Farm Bureau Mut. Ins. Co., , .
¶15 In this case, the trial court based the fee award on its inherent authority to award fees under the exception to the American Rule articulated in City National Bank & Trust Co. v. Owens, , . In Owens, we approved an award of attorney fees against a party that "has acted in bad faith, vexatiously, wantonly, or for oppressive reason." Id. ¶¶ 12, 17, 565 P.2d at 7-9. In the case of State ex. rel. Tal v. City of Oklahoma City, , ¶ 26, , this Court stated:
City National Bank & Trust Co. v. Owens, , , recognized the inherent equitable authority of a trial court to award attorney fees against a party for bad faith litigation misconduct - conduct that is vexatious, wanton or engaged in for oppressive reasons. The authority springs from a court's power to manage its own affairs to achieve the orderly and timely disposition of cases and is a necessary implicit element in the existence of a judicial system. See Winters By and Through Winters v. City of Oklahoma City, , , 726. Owens' progeny makes plain, however, the inherent authority exception to the American Rule recognized in Owens (1) is a narrow one; (2) should be applied with a degree of caution and restraint; and (3) was not intended to grant trial courts some broad, all-encompassing equitable authority to award attorney fees. Smith v. State ex rel. Dept. of Human Services, , , 961-962; see also Wallace v. Halliburton Co., , , 1060-1061. In plain words, the inherent power was not meant to be a mechanism to sanction or punish parties or their attorneys for raising novel theories or espousing unpopular causes that are neither baseless nor frivolous. For attorney fees to be awarded under a court's inherent authority "overriding considerations" must indicate the need for such a recovery. Owens, 565 P.2d at 8-9. 
More specifically at issue here, for a defense to constitute bad faith litigation misconduct, the defense "must be objectively unreasonable." Pope v. Fulton, , ¶ 16, , 1114 (citing Barnes v. Okla. Farm Bureau Mut. Ins. Co., , ¶ 15, , 29).
¶16 The trial court was within its discretion to accept Harris's controverted affidavit to support Plaintiff's allegations of bad faith conduct on the part of Durant. However, for Durant's conduct to constitute bad faith, its actions must have been frivolous, vexatious, wanton or engaged in for oppressive reasons and objectively unreasonable. Durant withheld two documents that gave rise to the case at bar: the Valuation and the DAA contract. Yet throughout litigation, Durant asserted cogent reasoning for its withholding of these specific documents. As to the Valuation, Durant argued that it was the property of CHSPSC and not Durant; therefore, it was not obtainable pursuant to (B). CHSPSC is the managing stockholder of Durant; and CHSPSC, not Durant, obtained and paid for the Valuation for planning purposes regarding a put right offered to Durant's members. Durant maintained that as it was not a party to the contract, it had no right, duty, or authority to disseminate the resulting Valuation. To further support this assertion, in order to release the Valuation, which it eventually did, Durant had to obtain consent from both CHSPSC and the contracted evaluator.
¶17 As to the DAA contract, Durant averred that while there is no Oklahoma case law specifically on point, it relied on theories gleaned from Delaware, which state that Plaintiff must provide a legitimate, specific rationale for demanding corporate documents in order to investigate wrongdoing. Durant was concerned that Plaintiff's request for the DAA contract had little to do with a purpose reasonably related to his interest in Durant, as required by (B), and more to do with Plaintiff's ongoing feud with DAA. To ensure that Plaintiff was requesting the DAA contract for a purpose reasonably related to his interest in Durant, Durant requested that Plaintiff provide a basis for the request. In response, Plaintiff's counsel sent an email stating that the basis for Plaintiff's request was due to concerns surrounding the DAA contract and potential violations of Stark Law and/or the Anti-Kickback statute. Yet rather than providing specific allegations regarding his request, Plaintiff merely attached an article that touts the dangers of Stark Law and made vague assertions that he was in possession of concerning information. Durant contended that because Plaintiff failed to give specific rationale for requesting the DAA contract, it was not required to produce it.
¶18 When determining whether a defense or conduct rises to the level of bad faith, it is important to note that novel or unpopular theories do not inevitably equate to bad faith if they have a reasonable basis in law and fact, even if they are unlikely to succeed. As both sides agree, there is little law interpreting (B). In its defense, Durant made cogent arguments regarding its withholding of only the documents at issue while producing several others upon Plaintiff's request. As Durant asserted arguments based in law and fact for its withholding of the Valuation and DAA contract, and this defense is objectively reasonable, a finding of bad faith is precluded.
¶19 Further, Plaintiff's reliance only on the facts giving rise to this case and an affidavit from Harris is not sufficient to support the trial court's finding of bad faith and the resulting sanction. Despite the fact that Plaintiff continually characterizes Harris's affidavit as "uncontroverted," the record tells a different tale. During oral argument, Scharnell succinctly rebutted Harris's affidavit, stating: "I do dispute that that was the conversation I had with him. . . ." Scharnell also produced emails between counsel which indicated that Scharnell--contrary to Plaintiff's assertions that Durant refused a continuance--was the one to initiate talks of a continuance. Though the parties could not agree to a date for the continuance, the motion was continued by the court, without opposition from Durant when Harris fell ill. The controverted facts do not rise to the level necessary to support the trial court's sanction of attorney fees and costs for bad faith.
Conclusion
¶20 We recognize that the trial court was very familiar with this case which began in June of 2016, and eventually resulted in judgment entered in January of 2018. The trial court was in the best position to evaluate the demeanor and credibility of the parties and counsel over the course of one-and-a-half years. However, based upon the totality of the record, we find that the trial court had insufficient evidence to support an award of attorney fees as a sanction for bad faith litigation conduct and abused its discretion in finding that Durant's actions amounted to bad faith. For this reason, we vacate the COCA's opinion, reverse the trial court, and vacate the award of fees and costs.
THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE DISTRICT 
COURT'S JUDGMENT ON ATTORNEY FEES IS REVERSED. 
Darby, C.J., Kauger, Winchester, Edmondson, Gurich, and Rowe, JJ., concur.
Kuehn, J. (by separate writing), concurs in result.
Kane, V.C.J. and Combs, J., dissent.
FOOTNOTES
 (B):
B. A member, for any purpose reasonably related to the member's interest, may:

1. At the member's own expense, inspect and copy any limited liability company record upon reasonable request during ordinary business hours;
2. Obtain from time to time upon reasonable demand:
a. true and complete information regarding the state of the business and financial condition of the limited liability company,
b. promptly after becoming available, a copy of the limited liability company's state and local income tax returns for each year, and 
c. other information regarding the affairs of the limited liability company as is just and reasonable; and
3. Have a formal accounting of the limited liability company's affairs whenever circumstances render it just and reasonable.

 At this time, the Valuation was subject to an agreed protective order which was later lifted pursuant to Durant's letter dated September 19, 2016.
 After the trial court's granting of Plaintiff's first motion for summary judgment, Plaintiff filed his first application for fees and costs on January 27, 2017, asking to recover $26,902.75 in attorney fees and $1,249.02 in costs. After the trial court's granting of Plaintiff's second motion for summary judgment, Plaintiff filed his renewed application for fees and costs on July 31, 2017, asking to recover $43,667.50 in attorney fees and $2,325.88 in costs. Plaintiff filed a supplement to his renewed application on November 28, 2017, asking for a total of $51,582.50 in attorney fees and $2,865.41 in costs.
 A determination on the applicability of has never been issued; however, we do not address this argument as it is not before us on appeal.
 In the affidavit, Plaintiff's counsel, S. Max Harris, made the following statement at issue:

On October 25, 2016, I spoke to Ryan Scharnell, counsel for Defendant. Mr. Scharnell expressed his client's desire to receive an immediate ruling on its Motion to Dismiss. Mr. Scharnell stated that the reason for this, was that if this case was over and the Defendant decided not to comply with a subsequent request made by [Plaintiff] under (B), that it would be Dr. Whittington's burden to file another lawsuit". R. 419, Vol. III Declaration of S. Max Harris, ¶ 2.

 Pursuant to Okla. Sup. Ct. R. 1.21, "[a]n appeal from the district court may be commenced by filing a petition in error with the Clerk of the Supreme Court within thirty days from the date the judgment, decree, or appealable order . . . was filed with the clerk of the district court." Okla. Sup. Ct. R. 1.3 states: "When the last day of the period so computed falls on a day when the court clerk's office at which . . . the instrument is to be filed is not open during the full business day (until 4:00 p.m.), the period shall stand extended to include the next ensuing business day." Here, Durant's thirty-day time to appeal ran on February 25, 2018, however, as this was a Sunday and the Clerk's office was not open, the time to timely appeal was extended to February 26, 2018.
 The COCA briefly addressed Durant's argument that the conduct complained of gave rise to the litigation and could therefore not constitute the foundation of a bad faith claim; but because this issue was not argued on certiorari, we decline to address it here.
 Mot. Hr'g Tr. 9, Oct. 3, 1017 [sic].
 Id. at 9--10.
 Id. exs. A--B.
 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967
 Harmon v. Cradduck, , ¶ 17, , 650.
 (E) provides:

AFFIDAVITS AND FURTHER TESTIMONY. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or as otherwise provided in this rule, set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

 See ORPC Rules 3.3, 8.4(c), 5 O.S. 2011, ch. 1, app. 3-A; State ex rel. Okla. Bar Ass'n v. Johnston, , ¶¶ 16, 18, , 1143 (analyzing the attorney-respondent's statement under Rule 8.4(c), Misrepresentation, and Rule 3.3, False Statement).
 See RGDP 1.3, 1.7, 5 O.S. 2011, ch. 1, app. 1-A.
 See Okla. Pleading Code, (B), which provides:
REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

 Pope v. Fulton, , ¶ 16, , 1114 (citing Barnes v. Okla. Farm Bureau Mut. Ins. Co., , ¶ 15, , 29.).
 A put right allows an investor "to compel the entity and/or the other owners to purchase their interest upon the occurrence of certain events." Alan S. Gutterman, Business Transaction Solutions § 36:48, Westlaw (Nov. 2021 Update). According to a letter addressed to Plaintiff's counsel by a Partner of Durant's law firm, in 2015--less than one year before Plaintiff requested access to the valuation--Durant allowed its members to inspect the valuation before occurrence of the put right "opportunity for repurchase of members' units in the LLC." Inspection allowed members to "review the manner in which the offered purchase price was determined," so they could dispute the offered price in accordance with the Operating Agreement.
 See Bizzari v. Suburban Waste Servs., Inc., No. CV 10709-JL, 2016 WL 4540292 (Del. Ch. Aug. 30, 2016).
 DAA sent Plaintiff and Durant a letter on December 1, 2016, which stated that DAA would no longer be accepting consults for induced labor epidurals for Plaintiff's or another doctor's patients after January 1, 2016 [sic]. Only after this letter was received did Plaintiff request all contracts/agreements between Durant and DAA.
 Pls. Reply to Defs. Objection to Pls. Application/Mot. for Attorneys' Fees and Costs, ex. B.
 See State ex rel. Tal v. City of Oklahoma City, , ¶ 26, , 247; see also Pope v. Fulton, , ¶ 16, , 1114.
 Mot. Hr'g Tr. 10, Oct. 3, 1017 [sic].
 Id. exs. A--B.
 Id. at 9.

KUEHN, J., CONCURRING IN RESULT:
¶1 I agree that the trial court erred in awarding Petitioner attorney fees on a finding that Respondents acted in bad faith. As the Majority says, exceptions to the American Rule awarding attorney fees are very narrow. It is and should be difficult to show that a party acted vexatiously, wantonly, or for an oppressive reason. Barnes v. Okla. Farm Bureau Mu. Ins. Co., , ¶ 15, , 29; State ex rel. Tal v. city of Oklahoma City, , ¶ 26, , 247-48. Here, at most, the record shows a controverted allegation that Respondents' actions in litigation were intended to increase Petitioner's costs and interfere with his ability to pursue his claims. I believe no rational factfinder could have found this allegation, if true, rose to the level of vexatiousness required to justify an award of attorney fees.
¶2 However, I do not join the Majority's discussion of affidavits, although I too would find the affidavit in this case was properly admitted. By statute, affidavits are an acceptable form of testimony. , 422, 431, 432, and 2056 (setting forth requirements for affidavits offered in support of or opposition to a motion for summary judgment). This is true no matter what the procedural posture of the case is; a properly executed affidavit is admissible as an accepted form of testimony whether it is offered in a pretrial motion, a motion for summary judgment, during the trial, or in post-trial proceedings. None of these statutes restrict admissibility of affidavits based on an affiant's circumstances. However, we have held that, where an affiant is an interested party and the relevant statement is controverted, the credibility of the affiant's testimony should be submitted to the trier of fact. Poafpybitty v. Skelly Oil Co., , ¶ 17, , 438. This isn't necessary where a statement is uncontroverted and has some support in the record. Id. An interested party is one who is a party to the lawsuit or has an interest in its outcome. Id.; Deutsche Bank Nat. Trust Co. v. Roesler, , ¶ 22, , 713-14. Neither Poafpybitty nor subsequent cases require corroborating evidence to be presented before the factfinder makes a determination of credibility. Of course, without such evidence it is likely that the factfinder will decide the statement is not credible. And such a determination goes to the weight to be given an affidavit, not its admissibility. An affidavit by an interested party, on a controverted issue, may be admitted for what it is worth, and a factfinder may decide it isn't worth much.
¶3 I emphasize this settled law because COCA's opinion may have blurred the issue as one of admissibility rather than weight. COCA seems to imply that a factfinder cannot make a credibility determination where no corroborating evidence supports a controverted or uncontroverted statement in the affidavit of an interested party.
¶4 Did the trial court properly consider the attorney's affidavit here? The affidavit was properly submitted under Section 421. The attorney affiant was an interested party: the affidavit was submitted to support his request that he be granted attorney fees and costs. The affidavit was controverted: affiant claimed opposing counsel made a statement, and opposing counsel denied it. So the trial court could properly consider the affidavit to determine its credibility. And if the trial court found the statement credible, it could rely on the affidavit in reaching its decision. As I state above, I believe the trial court abused its discretion in determining the merits of the attorney fee request. However, the court certainly could consider the affidavit in making that decision.
¶5 I write separately because the Majority does not address the potential ambiguity in the COCA opinion. The majority discusses Section 421 and Poafpybitty, but does not apply either law to this case. Instead, it veers into a discussion of attorney duties and responsibilities, and concludes that an affidavit by an attorney needs no corroboration. I don't disagree with that conclusion, but it does not answer the questions presented by COCA's opinion: when are affidavits admissible, and must an affidavit from an interested party be corroborated before it may be admitted and considered.